CRANDALL and others *v.* GOODRICH TRANSPORTATION Co.

(*Circuit Court, E. D. Wisconsin.* March, 1883.)

1. PARTIES—ACTION FOR NEGLIGENT BURNING OF HOUSE—OWNER AND INSURERS AS JOINT PLAINTIFFS.

In an action to recover the value of a building destroyed by a fire caused by the alleged negligence of defendant, the owner of the building and an insurance company that has paid the amount of insurance on such building and taken an assignment of the claim from the owner to that extent, may join as parties to the action when the value of the house exceeds the amount for which it was insured.

2. NEGLIGENCE—DEFINITION OF.

Negligence is the omission to do something which a reasonable man, guided by those considerations which ordinarily regulate the conduct of human affairs, would do, or doing something which a prudent and reasonable man would not do. It must be determined in all cases by reference to the situation and knowledge of the parties under all the attendant circumstances.

3. SAME—BURDEN OF PROOF.

In an action for negligence the presumption is that due care was exercised, and the burden of proof is upon the plaintiff to show by a preponderance of credible evidence that the defendant has been guilty of negligence. He must satisfy the jury that defendant by some act or omission violated some duty, and that such violation caused the injury complained of.

4. SAME—FIRE CAUSED BY DEFENDANT'S NEGLIGENCE—NEGLIGENCE OF OWNER —LOSS OF ADJOINING HOUSE.

Where a building has been set on fire by reason of the negligence of defendant, and the fire has extended to and destroyed a house belonging to plaintiff near by, negligence on the part of the owner of the building first burned will not of itself relieve the defendant from liability for his negligence; for where an injury is the result of two concurring causes, the party responsible for one of these causes is not exempt from liability because the person who is responsible for the other cause may be equally culpable.

5. SAME—PROXIMATE CAUSE.

Where a planing-mill is set on fire by sparks from a steamer which escaped because of the negligence of the owner of the boat, or those in charge of her,

and such fire extends to plaintiff's house, and the burning of such house is a result naturally and reasonably to be expected from the burning of the mill under the circumstances, and is the result of the continued effect of the sparks from the steamer, without the aid of other causes not reasonably to be expected, the negligence of the defendant will be considered as the *proximate* cause of the burning of plaintiff's house.

6. SAME—CONTRIBUTORY NEGILGENCE—QUESTION FOR JURY.

Where the negligence of plaintiff contributes proximately to an injury alleged to have been caused by the negligence of defendant he cannot recover; but the question as to whether plaintiff exercised, under all the attendant circumstances, the ordinary care that a reasonable man would under like circumstances exercise, is for the jury to determine from all the evidence in the case.

At Law.

*Cameron, Losey & Bunn, Robert Rae,* and *C. E. Vroman,* for plaintiffs, W. I. Crandall and Phœnix Insurance Co.

*E. H. Ellis, Hastings & Greene, Jas. G. Jenkins,* and *H. M. Finch,* for defendant, the Goodrich Transportation Co.

DYER, J., (*charging jury.*) It is alleged by the plaintiffs that on the twentieth day of September, 1880, the steamer Oconto, a boat belonging to the defendant company, was navigating the waters of Fox river within the limits of the city of Green Bay; that in consequence of the negligence of the defendant, and of those in charge of the boat at the time, sparks escaped from the chimney of the steamer to the shore, and there set a fire which destroyed a certain dwelling-house then owned by the plaintiff Crandall; and this suit is brought to recover the value of the building thus destroyed. It appears that at the time of the fire there was insurance upon the house to the extent of $4,000, the plaintiff insurance company having previously issued to the owner a policy of insurance for that sum. After the fire the insurance company paid to the owner the amount of such insurance, and thereupon the plaintiff Crandall transferred to the company his claim against the defendant, to the extent of $4,000, by virtue of which transfer the insurance company became subrogated to the rights of the owner to the extent of the amount of the insurance. It is admitted that the value of the dwelling-house was $5,846.81, and as this value exceeds the amount of the insurance, the owner of the building and the insurance company join as plaintiffs in this suit, as they may rightfully do.

There is not, as the court understands, any dispute about the fact that the fire in question began in the planing-mill or on the planing-mill dock, so often spoken of in the testimony; and it is claimed by the plaintiffs that the fire was set by sparks escaping from the steamer

while she was passing up Fox river, and as she was approaching the draw of Mason-street bridge; that the fire extended from the planing-mill in a north-easterly direction, and in its course consumed the house of the plaintiff Crandall, which, according to the testimony of one of the witnesses, was situated between 850 and 900 feet from the planing-mill.

The first question, therefore, to be determined by you is, did the fire which burned the planing-mill or planing-mill dock originate from sparks escaping from the steamer? I say the *first* question, because if you should find that the fire at the planing-mill was *not* caused by sparks from the steamer, that is an end of the case, and your verdict in that event should be for the defendant. But if your conclusion should be that the burning of the planing-mill was caused by sparks from the steamer, then other questions arise for your consideration, which will be submitted to you by the court.

(The court then stated the claims of the parties and called attention to the testimony on the question of the origin of the fire, which part of the charge it is unnecessary to insert here.)

The jury were then instructed as follows:

As I have before stated, if you find that the planing-mill fire was *not* set by sparks from the steamer, you need proceed no further in the case. But if you find that the fire *was* caused by sparks that escaped from the boat, you will then proceed to inquire and determine whether, in the equipment of the steamer, in her management, and in the control exercised over her on that day, proper precautions were taken by the owners of the boat, or those in charge of her, to avoid doing injury to others; in other words, whether the fire was occasioned by negligence on their part. To maintain this action it is essential that, in some one or more of the particulars alleged, negligence be shown. The foundation of the plaintiffs' claim is that the fire was caused by want of proper care on the part of the defendant and its employes in charge of the steamer at the time, and unless such want of care is established by the evidence there can be no recovery.

As is stated in one of the instructions which I am asked to give you, the gist of the action is the negligence of the defendant; unless that be established, the defendant is not liable. The presumption is that due care was exercised, and the burden of proof is upon the plaintiffs to show by a preponderance of credible evidence that the defendant has been guilty of negligence. It is incumbent upon them to satisfy you that the defendant, by its act or omission, vio-

lated some duty imposed upon it, and that such violation caused the injury complained of.

Negligence is claimed in three particulars. It is said—*First*, that on the day in question an unusually violent wind was blowing, and that its course was such as to carry escaping sparks and cinders from the steamer directly towards and upon the city of Green Bay; that a drought had prevailed and that it was then uncommonly dry; that the east shore of the river was lined with wooden buildings and docks, upon which there was combustible material; that the officers of the boat knew the topography and condition of the shore, and that in view of the alleged force and direction of the wind, the state of the weather, and all the circumstances existing at the time, it was negligence on the part of the officers of the boat to proceed up the river toward Depere; and it is claimed that in so doing those in charge of the steamer were guilty of great carelessness. *Secondly*, it is said that the boat was not prudently and carefully operated, and that this alleged want of care consisted in using her steam exhaust inside her chimney, thereby increasing the draft through the chimney, which it is claimed would have a tendency to cause a much greater emission of sparks than would take place if the exhaust was outside the chimney, or than would occur if there was what is called a natural draft through the chimney. *Thirdly*, it is claimed that it was negligence not to have a spark-arrester in or upon the smoke-stack of the steamer.

These are the three principal allegations of negligence made by the plaintiffs, and each one of them is controverted by the defendant.

In considering whether the defendant was or was not negligent, the test which the law applies, and which you should apply, is, what would an ordinarily-careful and prudent person have done with reference to the employment of the boat in navigation at that place, on that day, and with reference to her management and the use of a spark-arrester, under the precise circumstances then existing. Negligence is the omission to do something which a reasonable man, guided by those considerations which ordinarily regulate the conduct of human affairs, would do, or doing something which a prudent and reasonable man would not do. It must be determined, in all cases, by reference to the situation and knowledge of the parties, and all the attendant circumstances. The law does not charge culpable negligence upon any one who takes the usual precautions against accident which careful and prudent men are accustomed to take under

similar circumstances. *Parrott* v. *Wells*, 15 Wall. 524. In short, the defendant and those in charge of the steamer were bound to exercise reasonable care in operating and managing her, and by that is meant such care as a person of ordinary prudence would be expected to exercise in the circumstances existing at that time and place.

As before stated, in connection with the question first submitted to you, there is a controversy between the parties as to the direction and force of the wind when the steamer passed up the river and through the draw of Mason-street bridge. It is claimed by the defendant that it was not hazardous to property on shore, or imprudent for the boat to leave her landing and proceed on her voyage to Depere; that it was the right of the vessel to navigate the river at that time and place; that she was prudently and properly managed; that her steam exhaust was outside the chimney; that she was equipped as the law requires; was provided with all safe and necessary appliances to prevent the escape of sparks; and that the use of such a spark-arrester as the plaintiffs insist should have been attached to her chimney was not necessary or practicable, nor required by the circumstances of the situation.

In determining whether it was prudent and proper for the steamer to leave her landing and proceed up the river, and whether she was operated with due care, you will consider all the evidence on the subject, and also the entire situation—the direction and force of the wind, the material of which the planing-mill and dock were constructed, the condition of the dock with reference to combustible material thereon, the distance that the steamer was from the planing-mill; whether the master of the steamer knew the character and condition of the buildings and docks along the river on the Green Bay side, including the planing-mill and *its* dock; whether, in approaching and entering the draw of Mason-street bridge, the fire in the furnace of the boat was increased so as to make escaping sparks unusually dangerous; whether there was a prudent use of the power of the engine in the existing circumstances; whether the steam exhaust was inside or outside the chimney, which is a controverted question of fact, and one that you must settle upon the testimony; whether, in short, as I have before said, such care and prudence were exercised in controlling the movements of the boat as ordinarily-prudent persons would have exercised in like circumstances.

Concerning the use of a spark-arrester in the chimney of the steamer, the defendants take the position that if the vessel was provided with the equipment, machinery, and mechanical appliances

required by the act of congress regulating steam-vessels, this was sufficient, and that negligence is not imputable to the defendant because of the absence of a spark-arrester in the chimney of the steamer. I have given this question consideration and have concluded that the court ought not to instruct you, as matter of law that the owners of the boat were not bound to use a spark-arrester in or upon the chimney of the boat, but that it should be left to you to say upon the evidence whether or not the defendant was guilty of negligence in that respect. And here, again, the test is, what would an ordinarily careful and prudent man, owning such a boat as this, have done in regard to having an appliance in or upon her chimney to prevent the escape of sparks?

Much testimony has been introduced relative to the use and the practicability of using a spark-arrester on the Oconto and on steamers of her class. It is claimed by the plaintiffs that such a spark-arrester as has been described to you would have prevented the escape of sparks from this steamer, and would therefore have prevented the fire; that it is a device in use on many of the lake boats; that it could have been efficiently employed on the Oconto; and that prudence and a due regard for the safety of property on shore required its use on the occasion in question.

On the other hand, it is said that the use of such a device is not consistent with the safety of the boat; that by getting clogged it operates like a damper, and tends to obstruct the draft through the the chimney, and thus to interfere with the motive power of the boat; that when in condition for use it does not prevent the escape of sparks; that it has been found impracticable to use it; that the law applicable to steam-vessels does not require its use, and therefore, in view of these various considerations and others that have been suggested, the defendant was not bound to have such an appliance on this steamer.

Now, it is for you to say what was the duty of the defendant in this respect. What would an ordinarily-prudent man, who owned a boat like this, have done in regard to using a spark-arrester? In answering this question, you will take into account the manner in which the steamer was equipped with reference to her machinery and all her mechanical apparatus. If her equipment in that respect was such as the law requires, you may take that into consideration; you will consider whether this appliance in question has been found to be generally used by prudent and careful men in the management of vessels and steam-power; what is the general usage, what have been

the experiments made, and what are the opinions and experience of those who have used spark-arresters on boats; consider the situation and surroundings of the steamer at the time when it is alleged the fire was set; whether a spark-arrester would have operated efficiently to prevent the escape of sparks; whether its use would have in any degree endangered the safety of the boat itself; you will consider what appliances the boat had for controlling or regulating the escape of sparks; to what extent, if at all, the outside exhaust diminishes, and the inside exhaust increases, the quantity of sparks produced, and their escape through the chimney; and in the light of all the circumstances, you will say whether there was any duty imposed on the defendant to have a spark-arrester on this steamer at the time of the fire complained of occurred. *Kellogg* v. *Milwaukee & St. P. Ry. Co.* 5 Dill. 543.

＊　　＊　　＊　　＊　　＊　　＊　　＊　　＊

Upon this general question of negligence I need only add, in substantially the language of Mr. Justice MILLER, in the case of *Kellogg* v. *Milwaukee & St. P. Ry. Co., supra,* that with the elements of transportation used in commercial transactions, and with the great bulk of material transported to and from different parts of the country, the use of steam-power has become not only necessary, but indispensable to the interests of the whole country, and you may properly consider how far the interests of the public require those using this great power to be restricted, and how far the good of the people require those making use of it to adopt means of safety and protection. Steam and fire are dangerous elements, but they must be used. The defendant and its employes had a right to employ the steamer Oconto in navigating the waters of Fox river, but they were required to exercise such care and prudence as I have before stated to you; and the question is, was there anything in the circumstances and situation at the time in question to put those exercising control over the boat, on their guard? Did they exercise due care and prudence, such as an ordinarily-prudent person would have exercised? This is the gist of your inquiry.

If your conclusion shall be that the planing-mill fire *was set* by sparks from the steamer, but that it was not the result of any negligence on the part of the defendant or those in charge of the boat, then the plaintiff cannot recover, and the case would necessarily stop at that point. But if you find that the fire originated from sparks from the Oconto, and that it was caused by negligence on the part of

v.16,no.1—6

the defendant or those having control of the boat at the time, as claimed by the plaintiffs, then the next question to be considered by you is, was the burning of the Crandall house so connected with the burning of the planing-mill as to make the defendant responsible for the loss of the house? In other words, the inquiry at this point is, what was the proximate cause of the burning of the Crandall building? and this is a question for the jury, to be determined as a fact in view of the circumstances of fact attending it. *Milwaukee, etc., Ry. Co.* v. *Kellogg,* 94 U. S. 474. It is shown by the evidence, and not disputed that between the planing-mill and the Crandall building were other structures, which happened to be situated in and near to the path of the fire, some of which were burned and others of which were saved. There is testimony in the case tending to show that burning brands and cinders were carried through the air by force of the wind, from building to building, and that thus they were destroyed. Now, it is claimed by the plaintiffs that the burning of the Crandall house was the result of the continued effect of the sparks from the boat, without the aid of other causes not reasonably to be expected; that it was the result naturally and reasonably to be expected, and naturally following from the burning of the planing-mill, and therefore that the alleged negligence of the defendant was the proximate cause of the plaintiff's loss. This is controverted by the defendant. The rule by which you are to be guided in determining this question of proximate cause is not a difficult one. If any difficulty exists in this case with reference to the rule, it arises in applying it to the facts.

Before stating the principle by which you must be controlled in considering this question, I ought, in this connection, to pass upon another question, concerning which several instructions are asked by the defendant. It is claimed that the owner of the planing-mill was guilty of negligence in leaving combustible material, such as shavings and sawdust, on the planing-mill dock; and it is contended that if in consequence of the presence of this inflammable material, negligently left on the dock, the fire was started at that place by sparks from the boat, such negligence of the owner of the planing-mill will itself defeat a recovery, even though the defendant was negligent. I do not think that is so. In other words, I am of the opinion that the alleged negligence of the owner of the planing-mill does not of itself relieve the defendant from liability for *its* negligence if it *was* negligent. And this I hold upon the authority of cases in which it has been decided that where an injury is the result of two concurring causes, the party responsible for one of these causes is not exempt from liability be-

cause the person who is responsible for the other cause may be equally culpable.

Now, gentlemen, in order to reach the conclusion that the alleged negligence of the defendant was the proximate cause of the burning of the Crandall house, you should be satisfied that the burning of that house was the natural and probable consequence of the defendant's negligent act,—if it was negligent,—and that it ought to have been foreseen in the light of the attending circumstances. You will consider whether the burning of the planing-mill was occasioned by sparks from the steamer; if it was, then was the burning of the Crandall house a result naturally and reasonably to be expected from the burning of the planing-mill under the circumstances then existing, and was it the result of the continued influence or effect of sparks from the boat, without the aid of other causes not reasonably to be expected? And the circumstances to be considered in determining whether or not the burning of the Crandall house was a result naturally following from, and naturally and reasonably to be expected from the burning of the planing-mill, are, among others, the strength and course of the wind at the time, the material of which the planing-mill and dock and the buildings between the planing-mill and the Crandall house were composed, the distance between the planing-mill and the Crandall house, the distances between the different buildings that were situated in the path of the fire, the state of existing facilities on shore for arresting the fire, and any and all other circumstances and facts bearing upon the question as developed by the evidence. In determining whether the burning of the Crandall house was or was not a consequence of the burning of the planing-mill, naturally and reasonably to be expected, you will consider it in the light of all the circumstances as they existed just before the fire. The question is not, you will notice, what the captain of the boat did in fact expect or anticipate. The question is, what would any reasonable person in the then-existing circumstances have naturally and reasonably expected to be the result of the burning of the planing-mill? It is true, as I am requested to instruct you, that no person is responsible for *every* consequence, however remote, of his wrongful acts, but only for such as in the circumstances naturally follow and may naturally and reasonably be expected to be the result of his acts.

One of the tests by which to determine whether the burning of the Crandall house was the result of the continued effect of the sparks from the boat—if such sparks caused the fire at the planing-mill— is to ascertain whether there was any intervening cause between the

burning of the planing-mill and the fire at the Crandall house, which could not have been reasonably anticipated, and which produced the injury. Was there any such in this case—that is a cause not connected with the original negligence—if there was negligence—and not reasonably to be expected, and but for which the Crandall house would not have burned? If there was, then of course the burning of that house should be attributed to that cause, and the defendant would not, in that event, be answerable for the consequences. As for example, if, after the ignition of the fire at the planing-mill, the direction of the wind changed and its violence increased so that burning brands or cinders were carried to the Crandall house, and if that house would have been safe if the wind had not changed and its force had not increased, and if such change in the wind could not reasonably have been expected when the fire at the planing-mill began, then and in that case the burning of the Crandall house might fairly be attributed to a new and independent cause, for which the defendant would not be responsible. But though you should find that there was no new and independent cause to which the burning of the Crandall house was attributable, it is still necessary for you to say whether the destruction of that house was a result naturally and reasonably to be expected and naturally following from the burning of the planing-mill.

So, I may conclude what I have to say on this branch of the case by repeating that if you find that the planing-mill fire was caused by sparks from the steamer, which escaped because of the negligence of the defendant or those in charge of the boat, and if the burning of the Crandall house was a result naturally and reasonably to be expected from the burning of the planing-mill under the circumstances, and was the result of the continued effect of the sparks from the steamer without the aid of other causes not reasonably to have been expected, then you will be justified in concluding that the alleged negligence of the defendant was the proximate cause of the burning of the Crandall house. But if you find that the destruction of that house was not an event naturally and reasonably to be expected from the burning of the planing-mill, or was not the continued effect of the sparks from the boat without the aid of other causes not reasonably to have been expected, then the loss of the house should not be charged to the alleged original fault.

Yet another question remains to be submitted to you: It is claimed on the part of the defendant that after the fire broke out, Kimball, the occupant of the Crandall house, did not, as it is contended it was

his duty to do, remain at home where he could look after and protect the house against the danger of fire, and did not make proper exertions to check or prevent the burning of the house—in short, that he was negligent in that respect, and that in consequence of such negligence the loss occurred. Here again the rule of ordinary or reasonable care applies. It was the duty of the occupant of the house to exercise such care over it, and to make such exertions to protect it against threatened destruction by fire as a reasonably cautious and prudent man would be expected to exercise in the same circumstances; and if he neglected to use such care, and if the want of it contributed proximately to the loss of the house, then the plaintiffs cannot recover. In determining whether Mr. Kimball exercised ordinary care and diligence in the particulars mentioned, you will consider all the circumstances as they existed at the time: the location of the house, the direction of the wind, the course of the fire, the extent to which the house was threatened, whether the danger was or was not imminent, the time when the house burned, and the efforts made 'to save it, and you will say whether there was any want of such care and prudence on the part of the occupant of the house as a reasonably-cautious man would have exercised if placed in the circumstances that surrounded Mr. Kimball at the time. If there was fault on his part you will notice that to prevent a recovery it must appear to have been negligence that proximately contributed to the loss of the house, and this will suggest the inquiry, could the burning of the house have been prevented by the exercise of proper care by Kimball, if such care was not exercised? Was the building burned because of the want of such efforts on his part to prevent the burning, as a reasonably-prudent man would have made in the same circumstances? These are legitimate matters of inquiry in this connection.

Now, gentlemen, as a summary of what has been said, if you find from the evidence that the fire which destroyed the planing-mill was caused by sparks from the steamer Oconto, and that this occurred through or by reason of the negligence of the defendant or those in charge of the boat at the time, and that the burning of the planing-mill was the proximate cause of the burning of the Crandall house, and that the occupant of the house was not guilty of negligence which proximately contributed to its loss, then the plaintiff is entitled to recover. If, on the other hand, you find that the fire at the planing-mill was not set by sparks from the steamer, or that even though it was so set, it did not occur through or by reason of the negligence of the defendant or those in charge of the boat, or if you find that the

burning of the planing-mill was not the proximate cause of the burn-ing of the Crandall house, or that Kimball, the occupant of the house, was guilty of negligence that contributed proximately to its loss, then your verdict will be for the defendant.

\* \* \* \* \* \* \* \*

It is admitted that the value of the Crandall building at the time it was burned was $5,846.81, and if you should find for the plaintiffs your verdict should be for that sum, with interest thereon at 7 per cent. from the twenty-sixth day of August, 1881, which was the time when this action was commenced.