Burke v. U. S. Express Co.

## Lou Burke, W. E. Burke and D. C. Miller v. U. S. Express Co.

1. COMMON CARRIERS—*Liability in Respect to Live Stock.*—In transporting live stock, a carrier is bound to furnish cars of sufficient strength, and skillful employes, and to exercise that degree of care which the nature of the property requires, but he is not an insurer of the animals against injuries or death caused by their nature, which can not be guarded against by foresight and vigilance.

2. SAME—*Transportation of Animals.*—In the transportation of live freight, the carrier, in the absence of negligence, is relieved from responsibility for such injuries as occur from or in consequence of the vitality of such freight.   He does not warrant live freight against the consequences of their own vitality.

3. SAME—*How Relieved from Liability.*—A common carrier is relieved from liability if he can show that he has provided all reasonable means of transportation, and exercised that degree of care which the nature of the property requires.

4. SAME—*How Far an Insurer.*—A common carrier is an insurer for the safe delivery of live stock, and as such is answerable for every loss which can not be attributed to the act of God, public enemies, or to the vices of the animals themselves, and, in the case of loss resulting from such causes, the burden is upon the carrier to show his exemption from liability.

5. SAME—*Duty upon Delivery of Live Stock in Good Condition.*—The proof of delivery to the carrier of stock in live and good condition, and its injury or death while in the custody of the carrier, makes a *prima facie* case against the carrier, which may be rebutted by evidence that it provided all suitable means of transportation, and exercised that degree of care which the nature of the property required.

**Action in Case.**—Loss of live stock shipped by express.   Appeal from the Circuit Court of McLean County ; the Hon. COLOSTIN D. MYERS, Judge, presiding.   Heard in this court at the November term, 1899. Reversed and remanded.   Opinion filed February 27, 1900.

F. Y. HAMILTON and WELTY & STERLING, attorneys for appellants.

CHARLES L. CAPEN, attorney for appellee.

MR. PRESIDING JUSTICE WRIGHT delivered the opinion of the court.

Originally appellants sued appellee in assumpsit, and subsequently by leave of the court changed the form of action to case for the loss of a Poland China hog shipped to be carried by appellee from Vermilion, S. D., to Bloomington, Ill. The trial was by jury, and resulted in a verdict and judgment against appellants, from which they bring this appeal, the error chiefly argued by which a reversal of the judgment is sought, being that the court refused proper instructions requested by appellants, and misdirected the jury in its instructions given at the request of appellee.

By stipulation of the parties in open court the case was tried upon the two additional counts, in case, of the declaration, which are, in substance, as follows: First count alleges defendant was, on the 16th of February, 1896, operating a certain line of cars, known as express cars, from Vermilion, South Dakota, to Bloomington, Illinois, for the common carriage of goods for hire; that the plaintiffs on said date, at Vermilion, South Dakota, delivered to the defendant one Poland China boar (crated), named "King Price," of the value of $500, said hog being then in good condition, to be safely and securely carried to Bloomington, Illinois, and there to be safely and securely delivered for certain reward; that the defendant did not safely and securely carry said hog and deliver the some in good, live condition to the plaintiffs, but by the negligence of defendants permitted the said boar to be overheated in the car, and so treated in its transportation from Vermilion, South Dakota, to Bloomington, Illinois, that the said boar died while in the possession of defendant company.

Second additional count alleges defendant was possessed of and operating an express business as a common carrier, between Vermilion, South Dakota, to Bloomington, Illinois, and on the 16th day of February, 1898, the plaintiffs delivered to the defendant and the defendant then and there received of

the plaintiffs one Poland China boar (crated), named "King Price," which animal so owned by the plaintiffs was of the value of $500, to be safely and securely carried by the defendant to Bloomington, Illinois; that the defendant did not safely and securely carry the said Poland China boar to Bloomington, Illinois, and deliver the same to plaintiffs in good, live condition, but by the negligence of the defendant said animal became overheated and then was placed in a cold draught, from the effects of which said boar died, and was wholly lost.

It appears by the evidence that the hog was owned jointly by appellants, one-half interest by appellant Miller, and the other half by the Burkes, and was as contended, properly crated and delivered in live and good condition to appellee February 16, 1898, at Vermilion, South Dakota, to be carried to Bloomington, Illinois. The hog died *en route* in an express car of appellee, and its carcass was delivered at Bloomington, Illinois, February 18, 1898. In the view we have of the case it will not be necessary to discuss the evidence or what it proves. It is proper for us to say, however, that it was contended on the trial and the same is renewed in this court, on the part of appellants, that the evidence tended to show negligence on the part of appellee, in consequence of which the hog died, and by the appellee that the animal died either in consequence of improper crating, or by its nature, or the consequence of its own vitality.

The appellants requested the court to instruct the jury in substance that as a common carrier appellee was bound to carry live stock delivered to it, and deliver the same in good condition to the consignee, and on failure to do so, is liable for the loss or damage to the same, unless it proves such loss was occasioned by the act of God, the public enemy or because of vice inherent in the animal itself, but the court refused to so instruct the jury, but did direct the jury at request of appellee, in effect, that the carrier was only bound to use ordinary care, and unless appellants had proved by a preponderance of the evidence that the death of the hog was caused by want of ordinary care, the verdict should be for appellee. We are of the opinion the correct

rule in respect to a carrier's liability in respect to live stock, is stated in I. & St. L. R. R. Co. v. Jurey, 8 Ill. App. 160, to the effect that "the carrier is bound to furnish cars of sufficient strength, skillful employes, and to exercise that degree of care which the nature of the property requires, but he is not an insurer of animals against injuries or death caused by their nature, which could not be guarded against by foresight and vigilance. In the transportation of animals, in the absence of negligence, the carrier is relieved from responsibility for such injuries as occur from or in consequence of the vitality of the freight. He does not warrant live freight against the consequences of their own vitality. Hutchinson on Carriers, Sec. 218; Wharton on Neg. 616. And he is relieved from liability if he can show that he has provided all reasonable means of transportation and exercised that degree of care which the nature of the property requires. Cragin v. Railroad Co., 51 N. Y. 61."

Also, in C. & O. Ry. Co. v. Radbourne, 52 Ill. App. 203, which was a case for negligence in the carriage of live stock, the court held that under a count charging negligence generally, in that the defendant failed to carry the horses safely according to its duty as a common carrier, the particular act of negligence that produced the failure is immaterial; the failure to carry safely is itself *prima facie* a substantive and efficient cause of action; plaintiff is not required to prove or allege the particular circumstances of the loss or injury; citing Great Western R. R. Co. v. Mc-Donald, 18 Ill. 174.

From these decisions, and the authorities upon which they are based, it would seem that the true rule applicable to such cases is, that a common carrier is an insurer for safe delivery of live stock, and as such answerable for every loss which can not be attributed to the act of God, the public enemy, or the nature or proper vices of the animals themselves, and, as in the case of loss by the act of God or public enemy, the burden is upon the carrier to show exemption from liability, so also it is in the case of loss or death resulting from the nature or vice of the animal. In

other words the proof of delivery to the carrier of stock, in live and good condition, and its injury or death while in the custody of the carrier, makes a *prima facie* case against it, which may be rebutted by evidence that it provided all suitable means of transportation, and exercised that degree of care which the nature of the property required. Tested by the authorities we have cited, and which in our opinion announce the correct rule, the Circuit Court erred in its rulings upon the instruction in this respect.

In its instructions the court also told the jury that unless the plaintiffs proved by a preponderance of the evidence that the death of the hog was caused by the negligence of the defendant in permitting it to become overheated, or that after permitting it to become overheated, the defendant then placed it in a cold draught in the car, the plaintiffs can not recover. Besides being subject to the objections we have mentioned to the other instruction, this instruction improperly limited the jury to the fact of overheating. While it is true the first additional count of the declaration, as well as the second, charges that the defendant permitted the boar to become overheated, the first additional count also in effect charges that by the negligence of the defendant it so treated the hog in its transportation that it died, which in legal effect is a charge of negligence generally. The appellee having the exclusive charge and custody of the property when the loss occurred, it was for it to show what care it took of the animal, and after such proof it remained for the jury to say whether the overheating was caused by the want of such care as the nature of the property required. The court also instructed the jury at request of appellee, that if they believed from the evidence that the death of the hog was due, in whole or in part, from the manner of its carriage, yet unless the defendant was bound in the exercise of ordinary care to anticipate or foresee from such manner some serious injury to the hog from the cause or causes complained of in the declaration, it is not liable. This instruction, like those last mentioned, limited the jury to the specific causes specified in the first and second additional

counts of the declaration—overheating—when as before stated, if under the general charge of negligence in the first additional count, it did not appear the appellee used such care as the nature of the property required, and it was lost, such loss would be attributed to such want and care, and it would not be necessary in such case to show, or for the appellee to have anticipated, the precise cause that occasioned death to the hog. Besides, this instruction, because of its inapt expression, is subject to the further vice of submitting to the jury a question of law, in that it says to the jury:

" Unless the defendant was bound in the exercise of ordinary care to anticipate or foresee from such manner some serious injury to the hog from the cause or causes complained of in the declaration, the defendant is not liable."

It was doubtless intended by the instruction to tell the jury that if the defendant used ordinary care, and could not thereby anticipate the injury, it was not liable, and in this sense the instruction to that extent would be accurate; however, the instruction does not read so, and can not, we think, be so construed; but the court does tell the jury that unless the defendant was bound in the exercise of ordinary care to anticipate injury, it was not liable. Such instruction, where there is a close contest as to what the evidence proves, as in this case, is misleading.

One of the points made by counsel for appellee in support of the verdict and judgment is:

" Where two persons each own an undivided half interest in a chattel, they can not join in the same suit as co-plaintiffs, and if they do, they can not recover, and the defendant can raise this objection at any point in the proceeding, or on error, and under the plea to the general issue."

And we are cited to numerous authorities in support of this position. We have examined the authorities cited, and are of the opinion they did not sustain the point. So far as we can see, each of the authorities are in cases *ex contractu*, where the question arose as to the joint rights or liabilities of the parties under contracts, and the correctness of the position in such cases is familiar law; but we can see

no ground for its application in an action *ex delicto,* like the case presented, where appellants are joint owners of the property alleged to have been lost. They might of course, we think, bring separate actions, but if they agree, as it must be supposed they did, to bring a joint action in favor of all, it is not in the power of appellee to rightfully object to it.

For the errors in the instructions of the court to the jury, given and refused, the judgment of the Circuit Court will be reversed and the cause remanded for a new trial. Reversed and remanded.