RICHARD CLEVE, APPELLEE, v. CHICAGO, BURLINGTON & QUINCY RAILWAY COMPANY, APPELLANT.

FILED SEPTEMBER 21, 1906. No. 14,408.

1. **Carriers: LIVE STOCK: BURDEN OF PROOF.** In an action to recover damages from a carrier for injury sustained by live stock in transit, which are accompanied by the owner or his agents, the burden is on the owner to show that the loss complained of was occasioned by the carrier's negligence.

2. ————: **DELAY IN SHIPMENT: EVIDENCE.** In order to recover damages for an alleged delay in the shipment of live stock, it is necessary to introduce some competent evidence tending to show the length of time ordinarily required to transport the shipment from the place where received to the point of delivery, and that a longer time was actually consumed than was necessary for that

purpose. *Johnston v. Chicago, B. & Q. R. Co.*, 70 Neb. 364, followed and approved.

3. **Evidence** examined, and *held* insufficient to sustain the judgment of the trial court.

APPEAL from the district court for Otoe county: PAUL JESSEN, JUDGE. *Reversed.*

*J. W. Deweese, Frank E. Bishop* and *John C. Watson,* for appellant.

*W. W. Wilson, contra.*

OLDHAM, C.

This was an action for damages instituted by the plaintiff in the court below against the defendant railway company for the loss of two fat steers in the shipment of cattle from Nebraska City to Chicago. The cattle were shipped on the 8th day of August, 1899, and it was charged in the petition that the cattle died from overheat on account of delay in the shipment. Defendant's answer was in the nature of a general denial and plea of the statute of limitations. The cause was submitted to the court without the intervention of a jury, and at the close of the evidence judgment was entered for plaintiff. To reverse this judgment defendant appeals to this court.

Several alleged errors in the proceeding are called to our attention in the brief of the railway company, only one of which, however, it will be necessary to examine, in view of the conclusion about to be reached, and that one is that the evidence is not sufficient to sustain the judgment of the trial court. The testimony offered by plaintiff in the court below tended to show that on the 8th day of August, 1899, he shipped, under contracts entered into with the Burlington & Missouri River Railroad in Nebraska, eight carloads of stock from Nebraska City to Chicago. The stock were accompanied by two tenders during the entire shipment, and plaintiff himself accompanied the stock as far as Shenandoah, Iowa, at which point he took a passenger train to Chicago, the place of destination.

It appears from the testimony that the weather was hot when the shipment was made, but that all the stock were loaded in good condition, in suitable cars, properly bedded, at Nebraska City, at about 1 or 2 o'clock in the afternoon, on the day of the shipment. It further appears from the testimony that two stops were made between Nebraska City and Hamburg, Iowa, where the shipment was transferred from the branch to the main line of the road. Plaintiff and one of his tenders, McCarthy, testify that, when the train reached Hamburg, it remained on a sidetrack between two rows of box cars for about 30 or 40 minutes, and that the cattle became heated by reason of the fact that the box cars prevented the air from circulating through the stock cars. There is no competent evidence, however, that complaint was made either to the conductor of the train, or to the station agent, of this delay, nor is there any testimony that the delay was unnecessary and unusual. Plaintiff does say that he told the tenders to tell the conductor to move the train or the cattle would suffer from the heat. Mr. McCarthy, the only tender who testified, admitted that he did not notify the conductor of the train of the probable injury from this delay, or request him to move either the train or the box cars that impeded the circulation of the air. He thought, according to his testimony, that Mr. Cleve, the owner of the cattle, had entered complaint. On the other hand the conductor in charge of the train denied that any complaint was made to him of the delay at Hamburg, or that the delay there was unnecessary or for a longer time than was required to water and take on another car. It is shown in the evidence that one steer got down at Hamburg, and that this steer was dead when the train reached Stanton, about 7 o'clock in the evening. It is also in evidence that another steer got down near Stanton, and that this steer died shortly after the shipment was received in Chicago. There is no evidence in the record as to when the shipment, on schedule time, should have arrived in Chicago. Plaintiff, however, testified that it

was a slow shipment and stopped at all the stations, but there is no evidence that the stopping at each station was unnecessary or unusual in the transportation of live stock from Nebraska City to Chicago. There is no complaint of any failure to feed or water the cattle during the shipment, and it is admitted that the two attendants of the cattle were furnished with transportation by the company under the contracts of shipment. In fact, the cattle were shipped under three contracts, by consent of the agent of the defendant, in order that transportation might be furnished to plaintiff and his two tenders, who accompanied the cattle.

Now, the question arises as to whether or not this evidence is sufficient to show actionable negligence on the part of the defendant railway company. The authorities are not exactly uniform on the question as to whether or not the common law liabilities of carriers attach to railway and transportation companies in receiving and transmitting live stock. In Michigan it is held that a railway company is only required to transport live stock with reasonable diligence and to use ordinary care, prudence, and skill. *Heller v. Chicago & G. T. R. Co.,* 109 Mich. 53; *Sisson v. Cleveland & T. R. Co.,* 14 Mich 489. This rule appears to be favored in Kentucky and Tennessee. *Louisville & N. R. Co. v. Harned,* 23 Ky. Law Rep. 1651; *Baker & Stratton v. Louisville & N. R. Co.,* 10 Lea (Tenn.), 304. The clear weight of authority, however, is that in the transportation of live stock the liabilities of a common carrier attach, and this rule was adopted in this state in the early case of *Atchison & N. R. Co. v. Washburn,* 5 Neb. 117, wherein it was held that, when the railway company undertakes to carry live stock for hire, it assumes all the duties and liabilities of a common carrier with reference to such property, and it is liable for injuries thereto occasioned by the negligence of its servants. The general rule of absolute liability of a common carrier for the safe delivery of property committed to it for carriage is qualified when applied to live stock, and

made subject to the exception that it is not an insurer against injury resulting from the inherent nature or propensities of the animals, and without fault of the carrier. As to the presumption arising from loss or injury to stock while being transported by a common carrier, the authorities are at variance, one line holding that the presumption is that due care has been exercised by the carrier, and that the burden is on the plaintiff to show negligence on the part of the carrier. See *Crew v. St. Louis, K. & N. W. R. Co.*, 20 Fed. 87, and *Crandall v. Goodrich Transportation Co.*, 16 Fed. 75, and cases there cited. On the other hand, it has been held that, when loss or damages accrued during a shipment of live stock, the burden is upon the carrier to show that the cause of the loss or death was within the exceptions qualifying its general liability. *Moulton v. St. Paul, M. & M. R. Co.*, 31 Minn. 85, 16 N. W. 497; *Lindsley v. Chicago, M. & St. P. R. Co.*, 36 Minn. 539; *Burke v. United States Express Co.*, 87 Ill. App. 505; *Nelson v. Great Northern R. Co.*, 28 Mont. 297, 72 Pac. 642; *Ft. Worth & D. C. R. Co. v. Greathouse*, 82 Tex. 104, 17 S. W. 834; 5 Thompson, Commentaries, Law of Negligence, sec. 6576.

While the weight of American authority seems to favor the rule that in cases involving loss or injury to animals during transit the carrier has the burden of showing that the injury was occasioned without its fault, yet a distinction is made between live stock committed exclusively to the care of a common carrier and live stock shipped under a contract by which the owner, in person, or by his employees, accompanies the stock for the purpose of caring for them during transit. This distinction has been recognized by this court in the case of *Chicago, B. & Q. R. Co. v. Williams*, 61 Neb. 608, in which it was held that, where the shipper of stock does not agree to furnish a caretaker and some of the animals die, or are injured for want of care or protection in transit, the carrier must bear the loss. In rendering this opinion, it was said by SULLIVAN, J., "that the rule is not doubted that, where the owner

is in charge of live stock in transit, the burden is on him to show a loss caused by the carrier's negligence." In the still later case of *Chicago, St. P., M. & O. R. Co. v. Schuldt,* 66 Neb. 43, the above quotation was cited with approval, and it was further held that common carriers of live stock have a right to limit by contract the assumption of liability that accrues to them merely as bailees, and not strictly as common carriers. We think these cases establish the rule in this jurisdiction that, where by contract the shipper accompanies his live stock with tenders or caretakers, no presumption of negligence on the part of the carrier arises merely from the proof of the fact that loss or injury has attended the shipment, but the burden is on the shipper to show that the loss, if any, sustained was occasioned by the negligence of the carrier. Now, the only negligence alleged against the carrier in the case at bar is that of delay in the shipment. In the case of *Johnston v. Chicago, B. & Q. R. Co.,* 70 Neb. 364, the rule was laid down that, "in order to recover damages for an alleged delay in the shipment of live stock, it is necessary to introduce some competent evidence tending to show the length of time ordinarily required to transport the shipment from the place where received to the point of delivery, and that a longer time was actually consumed than was necessary for that purpose."

We think, under this rule, the evidence introduced was wholly insufficient to sustain the judgment, and we therefore recommend that the judgment of the district court be reversed and the cause be remanded for further proceedings.

AMES and EPPERSON, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.