LOUIS COHN, APPELLEE, V. CHICAGO & NORTHWESTERN RAILWAY COMPANY, APPELLANT.

FILED JUNE 3, 1916.   No. 18885.

1. **Carriers:** DELAYED SHIPMENT: LIABILITY.  To entitle the plaintiff to recover for negligent delay in transporting an interstate shipment of live stock, it is necessary to introduce some competent evidence tending to show the length of time ordinarily required to transport the shipment from the place where it was received to the point of delivery, and that a longer time was actually consumed than was necessary for that purpose.

2. ———: ———: REFUSAL TO WITHDRAW INSTRUCTION.  It is reversible error for the court to refuse to withdraw from the jury a charge of negligent delay in the transportation of live stock, where no competent evidence is introduced to support such a charge.

3. **Evidence** examined, its substance set out in the opinion, and *held* to be insufficient to support the verdict.

APPEAL from the district court for Douglas county: GEORGE A. DAY, JUDGE.   *Reversed.*

*A. A. McLaughlin, Wymer Dressler* and *Lyle Hubbard,* for appellant.

*A. L. Timblin* and *Charles L. Dundey, contra.*

BARNES, J.

Plaintiff commenced this action in the county court of Douglas county against the Chicago & Northwestern Railway Company to recover damages which he alleged he had sustained to a shipment of horses from LaBeau, South Dakota, to South Omaha, in this state.

On a trial in the county court plaintiff had a judgment, and the defendant appealed to the district court. The case was tried in that court on a petition which alleged, in substance, that the shipment of horses in question was received by the Minneapolis & St. Louis Railroad Company, was transported by that company to Northville, in the state of South Dakota, and there delivered to the defendant company at about 6: 30 p. m. on the 7th day of September, 1909; that the horses were transported from that point to the place of destination at South Omaha, Nebraska; that the distance from Northville, South Dakota, to South Omaha, Nebraska, over the line of defendant's railroad is about 352 miles, and the usual and necessary time for transporting live stock over said road between said points is not to exceed 30 hours, but that said horses did not reach South Omaha until about 6 a. m. on the 12th day of September, 1909, being in excess of 95 hours from the time said horses were received by the defendant for said transportation; that they were confined in the cars on the line of defendant's road for about 78 hours, of which time an excess of 12 hours was consumed in the yards of said company, and an excess of 65 hours running time on said road; that the delay in transportation of said horses occurred at Northville, South Dakota, and at various other points between Northville and South Omaha, the exact location of which points is not known to the plaintiff; that said horses were subjected to rough handling and careless and negligent treatment by the defendant between Redfield, South Dakota, and Huron, South Dakota, and at various other points between Northville and Redfield and between Huron and South Omaha. Plaintiff alleges that such rough handling and careless

and negligent treatment occurred at all points between Northville and South Omaha; that no part of such delay in transportation nor any part of the rough handling and careless and negligent treatment of said horses was in any manner the fault of the plaintiff; that, by reason of such unnecessary and unreasonable delay in transportation and such rough handling and careless and negligent treatment of said horses by the defendant, the plaintiff was damaged to the amount of $801 by reason of the gaunt, stale, bruised and damaged condition of said horses. Plaintiff prayed judgment for said sum of $801.

The defendant, by its answer, admitted that it was a common carrier, and that it received the shipment of horses at Northville, but denied all other allegations of the petition, and alleged that plaintiff accompanied the shipment as a caretaker, under the ordinary contract for that purpose, and that, if the plaintiff's horses were injured by delay or want of proper care, including feeding and watering, the same was not the fault of the defendant company, but was caused by the fault and neglect of the plaintiff, and not otherwise. The reply was, in substance, a general denial.

The cause was tried to a jury. The plaintiff had a verdict for $1,065.31. Defendant's motion for a new trial was overruled. Judgment was rendered on the verdict, and the plaintiff was awarded an attorney's fee of $150. The defendant has appealed.

Appellant, among other assignments of error, contends that the verdict of the jury is not sustained by sufficient evidence. It appears that plaintiff was his own witness and gave the only testimony in the record by which he sought to establish delay and rough handling of the horses in the matter of transportation. His evidence was, in substance, as follows: I had three car-loads of horses at LaBeau. I asked the agent at that point to wire to the defendant to stop its train and take them up at Northville. When I arrived at that point the defendant's train had gone. I hunted up the agent, and he wired the situ-

ation to the defendant company, and the conductor of the train came back from Redfield to Northville with his engine and crew. When they got there they unloaded the horses about midnight and placed them in the yards at that point. They were not fed or watered there. They were reloaded into the cars about noon the next day, and went on to Redfield, which was the next stop. The run from Northville to Redfield was pretty fair. The horses were taken into the train at Redfield and forwarded to Huron, arriving there about 7: 30 p. m. of the same day. The run from Redfield to Huron was a local one. They were unloading fence posts all along the road. They shook my horses up and down every time they unloaded the posts. They jarred them to pieces. They had a gondola car, or open box car. I expect I rode in the caboose. They kept me delayed all the afternoon until night.

Regarding the question of feeding and watering the horses at Northville, the agent of the company and others who assisted in unloading them testified that they were watered; that they pumped the watering trough in the yards full and the horses drank. The testimony also showed that a load of hay was put into the stock-yards so that the horses could eat the same if they desired. The plaintiff admitted those facts upon cross-examination, but insisted that the water was poor and the horses did not drink it.

Regarding the run from Redfield to Huron, the conductor of the train in which the horses were placed testified that the run occupied practically just two hours; that he had no fence posts in the train at all; that his train sheet, made up by himself, on that day, showed "barley, shingles, barley, wheat, wheat, barley, lumber, barley, wheat, lumber, wheat, wheat, wheat, one empty box car, wheat, barley, wheat, barley, wheat, emigrants, lath, three cars horses;" that the three cars of horses were at the head end of the train next to the engine; that he had no company material or posts whatsoever, and did no work between Redfield and Huron on that trip; that they arrived at

Huron at 7 p. m.; that he had no gondola car on the train at all, and had no men or crew whatsoever with him for the purpose of throwing off posts or anything else. The chief train dispatcher for the defendant at Huron corroborated him and testified as to the record of the movement of the train. It appears that the distance from Redfield to Huron is 40.4 miles, and the actual running time of the train in which the horses were transported from Redfield to Huron was 2 hours and 14 minutes. This time included a stop at a railroad crossing just south of Redfield, which would take about five minutes; another crossing stop at Valley Junction to turn a switch and come into Huron on the main line. This would require about five minutes. They stopped at another point and registered, which time required about five minutes. So it was conclusively established that the actual running time for the 40.4 miles was 2 hours, or 20 miles an hour. It is therefore apparent that the defendant's train did not have a load of posts on the run from Redfield to Huron, and there was no delay on said run. It further appears that, when the train arrived at Huron, the defendant had other shipments of freight sufficient to make up a special train if plaintiff's horses were included therein. The train dispatcher desired to make up such a train and run the horses through without stopping. The plaintiff, however, refused to go forward, and insisted that the horses had not been fed or watered at Northville, and so the horses were unloaded at Huron, were placed in the defendant's yards, and were again fed and watered. The next morning they were taken into a train and forwarded to Hawarden, which is the next stop, or the termination of the division. The plaintiff testified that the run from Huron to Hawarden was a local one; that they took off merchandise and made stops according to the dispatcher's orders; that, aside from its being a local, it was a good run; just fair; nothing to brag of. Plaintiff further testified that they stopped in Hawarden only long enough to make up the train, and that they had a good run from

Hawarden to Alton; that they arrived there at 11 o'clock on September 9. At Alton the shipment was delivered to the Chicago, St. Paul, Minneapolis & Omaha Railway Company, and handled by that company to Sioux City. The horses were delivered at the Sioux City stock-yards early on the morning of September 10. They were cared for by the stock-yards company during that day, and reloaded and redelivered to defendant at Sioux City at 5 p. m. on September 10, 1909, and arrived at South Omaha at 6 o'clock on the morning of September 11, 1909, which was the usual and proper time for a run between Sioux City and South Omaha. When the horses arrived at South Omaha they were delivered by defendant to the Union Stock-Yards Company at 6 o'clock on the morning of September 11, 1909, and plaintiff did not see them upon their arrival, but saw them for the first time at South Omaha about noon on September 11. They were then in the stock-yard pens. Witnesses for the plaintiff testified that, when the horses were seen at the stock-yards at South Omaha, they were gaunt and looked as though they had had a long, hard run; that eleven head were somewhat badly skinned and bruised. There was no testimony as to what plaintiff paid for the horses when he bought them in South Dakota, and there was no evidence as to what they were worth at that point. There was some evidence as to what they would have been worth had they arrived in good condition at South Omaha, and there was evidence tending to show what they actually sold for. It appears that the only evidence tending to show any rough handling or neglect on the part of the defendant company was plaintiff's own testimony. There is no doubt but that the plaintiff suffered some slight damage in relation to the shipment of horses, but, as we view the evidence, it was clearly insufficient to sustain the amount of plaintiff's recovery. It further appears that plaintiff failed to attend to feeding and watering his horses, and that he obstructed the defendant while it was attempting to per-

form that duty.  He was quarrelsome and abusive in his conduct toward the defendant's servants and agents.

The appellant requested the court to withdraw from the jury the question of negligent delay.  Its request was refused.  Considering the condition of the evidence, we are of opinion that the request should have been granted.  The plaintiff's action was based in part on defendant's alleged negligent delay in transporting his horses from Northville, South Dakota, to South Omaha, Nebraska.  As we view the record, the plaintiff failed to show any delay caused by unloading, feeding and watering his horses in Northville.  On the contrary, the testimony clearly establishes the fact that the shipment reached Redfield in time to be taken by the first train out of that station after they reached Northville on the way to Huron.  No delay was shown at either Northville or Redfield, and there was no testimony tending to show any delay in the transportation from Huron to the place of destination, which was South Omaha, Nebraska.  In order to recover for such delay, it was necessary for him to introduce some competent evidence tending to show the length of time ordinarily required to transport a shipment from the place where received to the point of delivery, and that a longer time was actually consumed than was necessary for that purpose. *Johnston v. Chicago, B. & Q. R. Co.*, 70 Neb. 364; *Cleve v. Chicago, B. & Q. R. Co.*, 77 Neb. 166.  In *Chicago, St. P., M. & O. R. Co. v. Kroloff*, 217 Fed. 525, it was held to be reversible error to refuse to withdraw unsupported charges of negligence from the jury.  We are therefore of opinion that by refusing defendant's request the court committed reversible error.

The overwhelming weight of the evidence shows that plaintiff's horses were unloaded into the company's yards at Northville for that purpose about midnight of September 7; that they were fed and watered by persons who testified to that fact and who were wholly disinterested in the outcome of this litigation.  It is true that the water was not the best, but it appears that other horses were kept

in the yards and they drank the water. The testimony of the defendant's witnesses was that the horses in question drank when the watering troughs were filled. Again, the plaintiff testified on his direct examination that the horses were not unloaded, fed and watered on the night of the 8th at Huron, South Dakota. He admitted, however, on cross-examination, that he went to the hotel and went to bed before 12 o'clock that night; that he paid no attention to feeding and watering his horses, and insisted that it was up to the defendant to perform that duty, and the only reason he gave for his statement that they were not fed and watered was that he found the horses loaded in the cars ready to go forward the next morning at about 6 o'clock. Witnesses who were wholly disinterested in the result of this suit testified that they assisted in unloading, feeding and watering the horses at Huron. Therefore, that fact was clearly established.

On the question of rough handling, the evidence is not so clear, and it is possible that plaintiff might have been entitled to some recovery on that branch of the case, but the evidence does not sustain the amount of plaintiff's judgment.

As we view the record, the verdict of the jury was excessive. It seems apparent that defendant did not have a fair trial.

The judgment of the district court is reversed and the cause is remanded for further proceedings.

REVERSED.

SEDGWICK, J., dissenting.

The rule stated in *Johnston v. Chicago, B. & Q. R. Co.*, 70 Neb. 364, that there must be evidence of the length of time ordinarily required in a shipment, does not seem to me to be applicable in this case. The plaintiff alleged that the time usually required was 30 hours. The only answer made to this allegation is a general denial, which, of course, could be made if the time was 31 hours, but would not in such case constitute a defense. The defend-

ant should have alleged the regular time if it was much more than the time alleged by the plaintiff. The defendant in its answer said: "If said consignment of horses encountered any unnecessary delay," etc. This, together with its evasive denial, would in law amount to an admission that the time was at least very nearly as alleged by the plaintiff.

It would appear that this is the only point of law upon which the reversal is predicated. The first paragraph of the syllabus makes this the principal point determined, and it is said in the opinion: "In order to recover for such delay, it was necessary for him to introduce some competent evidence tending / to show the length of time ordinarily required to transport a shipment from the place where received to the point of delivery." I suppose the second paragraph is predicated upon the first. The third paragraph simply says that the evidence does not support the verdict. Of course, that is for the reason stated in the first paragraph of the syllabus. As "the length of time ordinarily required to transport the shipment from the place where it was received to the point of delivery" is fixed by the pleadings,, I cannot see that the opinion states any ground for reversal.

FAWCETT, J., concurs.