# Richmond.

## COLLINS v. GEORGE.

### MARCH 10, 1904.

1. APPEAL AND ERROR—*Bill of Exception—Conclusive as to Facts Stated.*—In an appealable case a party has a right to a bill of exception to a ruling of the trial court which fairly states the truth of the case, and if necessary may obtain such a bill by mandamus. But if he elects to accept a bill as signed by the judge, it is conclusive of the facts therein stated, and its correctness cannot be questioned in the appellate court.

2. INSTRUCTIONS—*Objections to.*—As a general rule, it is too late after verdict to object to instructions.

3. NEGLIGENCE—*Conflicting Evidence—Question for Jury.*—Whether a defendant who is operating a stationary steam saw-mill has allowed combustible material to accumulate so near his engine as to be readily ignited by sparks therefrom is a question of fact for the jury, and their verdict will not be disturbed where the evidence is conflicting.

4. INSTRUCTIONS—*No Objection to—Verdict.*—If a verdict accords with instructions to which there is no objection, it is unnecessary to consider whether or not the instructions correctly state the law.

5. FIRE—*Care in Use of—Negligence.*—The general rule is that persons in the lawful use of fire must exercise ordinary care to prevent it from injuring others. What is ordinary care and prudence depends on the circumstances of the particular case. The greater the danger of communicating fire to the property of others, the more the precautions and the greater the vigilance necessary to constitute such care.

6. FIRE—*Stationary Steam Saw-Mill—Spark Arrester.*—As the operators of stationary steam saw-mill engines can minimize the danger of unintentional fires by removing combustible material a greater distance from their engines, and by keeping on hand suitable appliances for extinguishing fires caused by their engines, they are

not held to the same degree of care, in the matter of providing spark arresters, as railroad companies are which operate their steam locomotives over long distances on a narrow right of way.

7. FIRE—*Stationary Steam Saw-Mill—Spark Arresters—Negligence.*— Where it appears that it is not customary to provide stationary steam saw-mills with spark arresters, and that what are considered properly equipped saw-mill engines are sold without such spark arresters, it cannot be said that the failure to provide such an engine with a spark arrester is *per se* negligence, but it is a circumstance from which such negligence may often be inferred.

8. CORRECT VERDICT—*Erroneous Instruction—Conflict.*—A verdict should not be set aside simply because it is in conflict with an erroneous instruction to which no objection was made, if upon the whole case there appears to be sufficient evidence to warrant the verdict.

Error to a judgment of the Circuit Court of Caroline county rendered in an action of trespass on the case, wherein the plaintiff in error was the plaintiff, and the defendant in error was the defendant.

*Affirmed.*

The opinion states the case.

*Chandler & Chandler,* for the plaintiff in error.

*William E. Ennis,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

This action was brought by Charles L. Collins to recover damages for injuries done his property by fire, resulting from the alleged negligence of Lewis D. George.

Upon the trial of the cause a verdict was found in favor of the defendant, which the plaintiff moved the court to set aside upon the ground that the court had misdirected the jury by an oral instruction, and because the verdict was contrary to the law and the evidence. This motion was overruled, and judgment

entered upon the verdict. To that judgment this writ of error
was awarded.

The errors assigned here are the same as the grounds upon
which the lower court was asked to set aside the verdict.

The oral instruction complained of was given under the fol-
lowing circumstances, as disclosed by bill of exceptions No. 2:

"After the jury had heard the evidence, had been instructed
by the court, and, having heard the argument of counsel, retired
to their room to consider of their verdict, and, after being out
some time, returned into court, and said they could not agree,
the court then told them that if they had disagreed on any ques-
tion of fact it could not help them, that they were the sole judges
of the fact.

"The foreman then told the court that some of the jury could
not reconcile the instruction given at the instance of the plaintiff
(the one relating to combustible material near the mill) and
instruction No. 3 (which had been given at the instance of the
defendant, and given by the court without objection by the
plaintiff as given), and, as the court understood, desired some
explanation as to 'ordinary care.'

"The court then read over said instruction No. 3, and orally
told the jury the first thing they had to determine was whether
the fire was the result of the negligence of the defendant; that
if they believed from the evidence that the defendant was negli-
gent, and believed the evidence on which the plaintiff's instruc-
tion was based, they must find for the plaintiff; that instruction
No. 3 referred, for instance, to the question as to whether the
fire was or was not an accident. In other words, that if they be-
lieved from the evidence the fire could not have been prevented
by the exercise of ordinary care and caution on the part of the
defendant in the management of his sawmill and mill site, and
that the defendant had exercised such ordinary care and caution
as might be expected of a man ordinarily prudent under similar
circumstances, they must find for the defendant; that whether

he was negligent, or whether he had exercised such care and caution, they alone must determine.

"The plaintiff did not except to the foregoing, but just as the jury were about to return again to their room to further consider of their verdict plaintiff's counsel asked the court to call the jury's attention specially to this instruction as to combustible material near the mill, but the court, thinking it had done so in sufficient terms, told the jury they must read all the instructions, and must, on the facts, reach their own conclusions."

The plaintiff insists that the bill of exceptions does not state fully nor correctly the oral instruction as understood by the plaintiff's counsel and the jury, and to sustain this contention a letter from a majority of the jury is filed with the plaintiff's petition for the writ of error.

If the bill of exceptions, as signed by the judge, did not correctly state what occurred when the oral instruction was given, the plaintiff had a right to have a bill of exceptions which did state the truth of the case, and, if necessary, could have obtained such a bill by *mandamus*. *Collins* v. *Christian,* 92 Va. 731, 732, 24 S. E. 472. But, having elected to accept the bill as signed by the judge, it is conclusive of what did occur when the oral instruction was given, and its correctness cannot be questioned in this court.

As appears from the bill of exception, that the plaintiff did not except to the oral instruction of the court until after the jury had rendered their verdict and been discharged. The general rule is that it is too late after a verdict to object to instructions. *Newport News, etc., Co.* v. *Bradford,* 99 Va. 117, 118, 37 S. E. 807; *Richmond & Danville R. R. Co.* v. *Medley,* 75 Va. 499, 503, 40 Am. Rep. 734. But if there be exceptions to the general rule, and this case be within the exceptions, the oral instruction is a correct statement of law, and the action of the court in giving it and in refusing to further instruct the jury upon a question as to which they had already been instructed, and very

favorably to the plaintiff, could not have misled the jury to his prejudice.

The other error assigned, as before stated, is the refusal of the court to set aside the verdict because contrary to the law and the evidence.

The certificate of the court as to the testimony in the case purports to be a certificate of the facts proved during the trial. It sets forth that on the 17th day of July, 1902—the date of the fire in question—the defendant was engaged in manufacturing lumber upon a sawmill operated by a steam engine located on land adjoining the land of the plaintiff; that sparks from the engine escaped, and ignited some laps of trees which the defendant had cut down and allowed to remain just beyond the sawdust pile of the defendant; that the fire was discovered by an employee of the defendant engaged in hauling logs to the mill, who at once told the sawyer, and then tried to extinguish the fire; that the sawyer, after finishing the line he was cutting in the log on the saw carriage and running his saw back, went with the mill hands and attempted to put out the fire with water, and used other means to prevent it from escaping or from doing damage to the defendant's plant; that a spark was carried by the wind from where the fire started to a point about fifty yards distant in the woods; that the employees of the defendant pursued the fire which had thus escaped, and attempted by burning against it and by other means to arrest its progress; that the weather was hot and dry, with "considerable" wind blowing from a southwesterly direction, which carried the fire across the land occupied by the defendant and upon the land of the plaintiff, and burned over 444 acres of the same, destroying cedar, pine, and other growth of timber, damaging the plaintiff from $150 to $3,000, as variously estimated by the witnesses; that the defendant's employees did all they could to arrest the progress of the fire and to prevent its spreading; that the defendant kept constantly on hand a barrel and buckets filled with water for

use in case of fire; that they were so filled and used on the day of the fire; that the defendant is an experienced sawmill man, having been in the business twenty-three years, owns four sawmills and a planing mill, but was not at the mill on the day of the fire; that at the time the defendant placed his sawmill upon the land where it was when the fire originated he cleared off a good millyard one hundred yards around the plant, and took all the usual precautions in clearing and preparing the same, but after this he had cut down near the sawmill and engine some trees, whose laps fell together, which were allowed to remain just beyond the sawdust pile; that the outer top end of the sawdust pile was by actual measurement ninety-five feet from the smokestack of defendant's engine; that on the outer edge of the sawdust pile was a cartway, along the far side of which the fire had turned, which was within 83 2-3 feet of the sawmill; that the distance from the engine to the laps had never been measured, but the defendant and his witnesses estimated it at seventy-five yards; that the engine and its equipment were in thorough order, but the engine was not at the time of the fire, and never had been, supplied with a spark arrester or other appliance to prevent the escape of sparks; that it was not the usual practice in the county to have such appliances affixed to sawmill engines, though in some instances a few years ago they had been used; that no up-to-date, and what is considered a properly equipped, sawmill engine is now sold with a spark arrester, unless ordered specially with the engine; that, although the defendant's engine had no spark arrester, it was considered a modern, up-to-date sawmill engine fully equipped, except it had an old smokestack, which was twenty feet high; that there was no difference between the defendant's smokestack and a new one; that the use of a spark arrester impeded the powers of an engine, and measurably prevented it from generating steam; that their use requires engines with more power than usual, and because of the invariable use of green wood in sawmill engines they would not

draw so well with a spark arrester attached, and that the meshes of the arrester would clog, but, if dry fuel was used, these difficulties would be overcome; that some years ago a sawmill man of the county had used an arrester, but did not always keep it closed; that another sawmill man doing business in the county of King George had some years before operated a sawmill engine with a spark arrester put in at the instance of a very particular old man; that a high smokestack would not be so apt to emit sparks, but when it did the sparks would go a greater distance before reaching the ground than those escaping from a short smokestack; that stationary engines in the county used in the manufacture of excelsior fibre are usually equipped with spark arresters, but they burn dry wood, while green wood is used in sawmill engines; that one of the plaintiff's witnesses, who was the manager of a sawmill for plaintiff's son, testified that he considered the defendant's yard a good one, and that any sawmill yard was liable to catch on fire in the summer time.

The contention of the plaintiff is that upon the facts proved the verdict of the jury was in direct contravention of the rulings of the court, to which no exception was taken by the defendant.

Instructions "a," "b," and "c," given for the plaintiff were based upon the hypothesis that the defendant had permitted combustible material to accumulate so near to his engine as to be easily ignited by sparks escaping therefrom.

The evidence as to the location of the laps, the alleged combustible material, is conflicting. The plaintiff's evidence places them just beyond a pile of sawdust, the outer top of which was only ninety-five feet from the engine, whilst the defendant and his witnesses locate them 75 yards, or 225 feet, from the engine. It does not appear when the trees were cut whose laps caught on fire, nor of what kind of timber they were, nor whether they were so combustible as to be likely to catch on fire easily. The mere fact that they did catch on fire on a hot, dry and windy day was not conclusive evidence that they were dangerously in-

flammable, or likely to take fire the distance they were from the engine. Upon all the evidence the jury may not have been satisfied (and the question was for them) that the defendant had allowed conbustible material to accumulate so near his engine as to be easily ignited by sparks therefrom. If they were not, their verdict was not in contravention of either instruction "a," "b," or "c."

The verdict of the jury not being in conflict with those instructions, and there being no objection to them, it is unnecessary to consider whether or not they correctly state the law.

The plaintiff's other instruction, "d," to the giving of which there was no objection, told the jury that if they believed from the evidence that the plaintiff sustained damages by fire about the 17th day of July, 1902, and that said fire originated from an engine operated by the defendant, and that the defendant operated the said engine without the use of the latest and best known appliances to prevent the emission of sparks from said engine, the defendant assumed the risk of so operating said engine, and they must find for the plaintiff. If the jury had followed this instruction, they could not have found the verdict they did, for there is no question that the fire did originate from the defendant's engine, and that he did not have the best known appliances to prevent it from emitting sparks.

The general rule is that persons in the lawful use of fire must exercise ordinary care to prevent it from injuring others. What constitutes ordinary care and prudence depends upon the circumstances of the particular case. The greater the danger of communicating fire to the property of others, the more precautions and the greater vigilance will be necessary in order to measure up to the requirements of ordinary care. It is the settled law of this State that a railroad company is liable where the fire is attributable to the want of proper spark arresters upon its locomotives. *Brighthope Ry. Co.* v. *Rogers,* 76 Va. 443, 450; *Patteson* v. *C. & O. Ry. Co.,* 94 Va. 16, 21, 26 S. E. 393; *Kim-*

*ball & Fink* v. *Borden,* 95 Va. 203, 287 S. E. 207. But it is a
matter of common knowledge that locomotive engines, propelled
by steam, are exceedingly dangerous, and liable to cause uninten-
tional fires. Such great danger and the frequency with which
such fires occur have doubtless caused the courts to hold that the
failure of those operating such machinery to use spark arresters
or other appliances to prevent the emission of sparks makes them
*per se* guilty of negligence. There is not the same degree of
danger and liability to cause unintentional fires by stationary
steam sawmill engines operating in the country. The operators
of such engines can minimize the danger of causing such fires
by removing dangerous combustible material a greater distance
from their engines than can railroad companies operating their
locomotives over hundreds of miles of road on their narrow
right of way. Again, operators of stationary engines can keep
on hand appliances and means of putting out fires caused by
their engines, which it is impossible for railway companies to
do. See *Peers* v. *Elliott, etc.,* 21 Can. Sup. Ct. 19; *Atkinson*
v. *Goodrich, etc., Co.,* 60 Wis. 141, 167, 18 N. W. 764, 50 Am.
Rep. 352; *Holman* v. *Land Co.,* 20 Colo. 7, 13, 36 Pac. 797;
*Crandall, etc.,* v. *Goodrich, etc., Co.* (C. C.), 16 Fed. 75.

The proof in this case shows that the use of spark arresters
on sawmill engines was not customary in that county; that such
arresters impede the powers of engines, and measurably prevent
them from generating steam, when green wood is used for fuel
(as is invariably the case with sawmill engines) ; that the meshes
of the arresters become clogged, and the draft of the engines les-
sened; and that no up-to-date and what is considered a properly
equipped sawmill engine is now sold with a spark arrester.

We are of the opinion that, while the failure to use a spark
arrester upon a stationary sawmill engine is a circumstance
from which negligence may often be inferred, it cannot be said
that such failure is *per se* negligence, and that instruction "d"
was therefore erroneous.

Had the verdict been in conformity with the instruction, great difficulty might arise in interfering with it, because a party objecting to an erroneous instruction must do so at the time; otherwise, in general, he will be considered as having waived the objection. But as the verdict was in favor of the defendant, against whom the erroneous ruling was made, it will not be set aside because it is in conflict with that ruling, if upon the whole case there was sufficient evidence to warrant the verdict. *Richmond & Danville R. R. Co.* v. *Medley, supra.*

Upon the evidence before the jury, as hereinbefore set out, the jury might properly have reached the conclusion they did. At least we cannot say that the evidence is plainly insufficient to sustain their verdict.

The judgment of the Circuit Court must be affirmed.

*Affirmed.*