## Richmond.

CHESAPEAKE AND OHIO RAILWAY CO. v. SHIPP'S ADMINIS-
TRATRIX.

November 17, 1910.

Absent, Cardwell, J.

1. DEMURRER TO EVIDENCE—*Presumptions.*—On a demurrer to the evi-
dence, where the facts are disputed, the evidence for the de-
murree must be conclusively presumed to be true.

.2. APPEAL AND ERROR—*Negligence—Difference of Opinion—Judgment
of Trial Court.*—In an action against a railroad company to
recover for the negligent killing on the track of an employee
to whom it owed the duty of lookout, if the evidence is such
that fair minded men might well differ as to whether the
servants of the company exercised reasonable care to discover
the peril of the decedent, or whether, after having discovered
his peril, or when they should have discovered it by the exer-
cise of ordinary diligence, they did all that duty required in
order to avoid the injury, the judgment of the trial court, ad-
verse to the company, on a demurrer to the evidence by it, will
not be disturbed. The judgment of the trial court in such case
cannot be said to be erroneous when fair minded men may well
differ as to the conclusion to be drawn from the evidence.

Error to a judgment of the Circuit Court of Augusta
county in an action of trespass on the case. Judgment for
the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*J. M. Perry* and *R. L. Parrish*, for the plaintiff in error.

*Charles & Duncan Curry* and *Timberlake & Nelson,* for the
defendant in error.

KEITH, P., delivered the opinion of the court.

John A. Shipp's administratrix brought this action in the Circuit Court of Augusta county to recover damages for the death of her intestate, which she alleges was occasioned by the negligence of the railway company. The defendant demurred to the evidence, the jury ascertained the damages to be $4,500, and the circuit court gave judgment for that amount.

The evidence on behalf of the plaintiff proves or tends to prove, the following facts: That on the morning of the accident Shipp was a track-walker employed on the yards of the Chesapeake and Ohio Railway Company at Waynesboro, one of his duties being to coal the engine of a local freight which was made up at that station to draw a freight train to the city of Charlottesville. About seven o'clock on the morning in question, the engine, headed east, and drawing a caboose with a train crew aboard, moved in a westwardly direction from Basic City to Waynesboro. At the east end of the Waynesboro yard there is a short coal-bin track parallel with the main line, connection between the two being across a short traverse or "lead" track. The engine drawing the caboose and running backward was switched into this "lead" track, and the engine was loaded with coal from a coal car, which it was the business of Shipp to shovel from the coal car to the tender of the engine. After the coaling was completed there followed a movement, which, at the time of the accident, had occurred every morning for at least two months. The engine pushed the caboose eastward along the main track, was then reversed, and "jerked" the caboose westward on the main line. The coupling pin being lifted at the proper time by a brakeman, the engine ran into the "lead" track, and the caboose passed westward on the main line. The engine then proceeded to pick up the cars upon the yard and to make up its train. The train being made up, it would move

out upon the main track, pick of the caboose, which would be in its rightful position in the rear of the train, and proceed upon its journey.

Upon the morning of the accident these various operations had been performed. The engine had passed out upon the sidetrack and the caboose had been jerked onto the main line. Upon the caboose there was a brakeman, placed there for the purpose of keeping a lookout upon the track to prevent injury to anyone who might be upon it. The caboose was equipped with a hand brake, which was in good order, was moving at the rate of about six miles an hour and could have been stopped within the distance of about twenty feet. After the engine passed upon the switch, which was north of the main line, and had moved far enough to clear the main track, the view from the rear of the caboose was unobstructed, and a person in possession of the sense of sight had an unobstructed view and if upon the lookout must have seen anyone upon the track for a considerable distance.

The evidence for the plaintiff is to the effect that Shipp was at work with a wrench, tightening the bolts upon a fishbar; that he was stooping over in a bending position, facing toward the west and with his back toward the east, from which direction the caboose was approaching. Those upon the engine and others in the immediate vicinity, seeing him thus engaged, that the caboose was close upon him, and that he was unconscious of his danger, cried out to him, with the result that instead of looking around he straightened up and looked toward the engine, which was a natural thing for him to do, as the cries came from that point. Before his attention could be directed to the real source of danger, he was struck by the caboose and killed. The witnesses for the plaintiff say that the brakeman made no effort to avert the disaster until the caboose was so close upon Shipp that the collision was inevitable; that he then caught hold of the brake, but they were unable to say whether he applied it or not.

The testimony of the brakeman is (and he is corroborated by the conductor of the train and by some of the disinterested witnesses), that he was keeping, as it was his duty to do, a careful watch upon the track, and that he never saw Shipp until within about six feet of him, when he stepped from the path alongside the road onto the track under circumstances that rendered it impossible for the brakeman to prevent the accident by any means within his power.

If the testimony of the brakeman could be believed, there was no negligence upon the part of the railroad company, and Shipp's death was due to his own fault. What the truth of the matter is will perhaps never be known, but for the purposes of this case, on a demurrer to the evidence, the account given by the witnesses for the defendant in error must be conclusively presumed to be true.

From the point where the engine was shifted to the side-track and "jerked" the caboose onto the main track to the point where the accident occurred, is stated by agreement in the record to be 135 feet. The track for that distance was clear and straight. Thomas, the brakeman, was in possession of his faculties. It was his duty to keep a lookout. Had he kept a lookout, he must have seen all that was upon that track between the point at which the engine cleared the caboose and the point at which the accident occurred. *N. & W. Ry. Co.* v. *Crowe*, 110 Va. 798, 67 S. E. 518. He must have seen Shipp, who was, during the whole of that period from the time the engine left the main track until he met his death, engaged at work, as has been already stated, tightening the bolts in a fish-bar, bending over and with his back to the caboose. This is the position assigned to him by all the witnesses for the defendant in error. They saw his danger, and by calling out tried to warn him of his peril. If Thomas did not see him and his condition of unconscious danger, then according to the testimony of all these witnesses, he failed to see what other witnesses swear that they saw and which,

upon a demurrer to the evidence, it must be admitted that they did see. It is true that it all happened within a very short time—within a very few seconds of time; but on the other hand a light caboose car, equipped, as this one was, with proper brakes, if properly applied, could have been stopped, the evidence tends to prove, within its own length of from sixteen to twenty feet.

It will be observed that the evidence for the defendant in error does not deny that the brakes were applied. The witnesses merely say that they saw the brakeman's hand upon the brake handle, but they did not see the handle turned. In this condition of the proof, if the testimony given by Thomas were coherent and clear, the fact that others did not see the brake turned would not necessarily be in conflict with the statement of Thomas that he applied the brake; but the testimony of the witnesses of the defendant in error is at every material point in conflict with that of Thomas, and if their statements as to what occurred be true, then the account given by Thomas is wholly unworthy of credit.

The law upon this subject has been so recently and so fully considered by this court that we shall content ourselves with referring to *C. & O. Ry. Co.* v. *Corbin*, 110 Va. 700, 67 S. E. 179, and *Southern Ry. Co.* v. *Bailey*, 110 Va. 833, 67. S. E. 365. The facts of this case, however, bring it, we think, within the operation of the principle first decided by this court in *Carrington* v. *Ficklin*, 32 Gratt. 670, reaffirmed in *Kimball & Fink* v. *Friends' Admr.*, 95 Va. 125, 27 S. E. 901, and in numerous other cases down to *Roanoke Ry. Co.* v. *Young*, 108 Va. 783, 67 S. E. 961, so that it may now be regarded as the established law of this Commonwealth, that "when the question arises upon a state of facts on which reasonable men may fairly arrive at different conclusions, the fact of negligence cannot be determined unless one or the other of these conclusions has been drawn by the jury. The inference to be drawn from the evidence must be either certain or incontro-

vertible, or it cannot be decided by the court. Negligence cannot be conclusively established by a state of facts upon which fair-minded men will differ."

The evidence proves—indeed, it was in the argument conceded—that Shipp was guilty of contributory negligence up to the time of the accident; and we are of opinion that the questions which control this case—(1) Whether or not the brakeman exercised reasonable care to discover the peril of defendant in error's decedent; and (2) Whether, after having discovered his peril, or in the exercise of reasonable diligence, ought to have discovered it, he did all that his duty required him to do to avoid the injury—are questions about which, upon the facts disclosed in this record, fair-minded men might well differ. From which it follows that the judgment of the circuit court must be affirmed.

*Affirmed.*