𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

NORFOLK SOUTHERN RAILROAD COMPANY V. CROCKER.

March 11, 1915.

Absent, Cardwell, J.

1. NEGLIGENCE — *Last Clear Chance — Principle of Doctrine—Concurring Negligence.*—The doctrine of the last clear chance is a qualification of the general rule that contributory negligence bars a recovery, and the principle of the doctrine is that, although the plaintiff has been negligent in exposing himself to peril, and although his negligence may have continued until the accident happened, he may nevertheless recover if the defendant, after knowing of his danger and having reason to suppose that he may not save himself, could have avoided the injury by the exercise of ordinary care, and failed to do so. It is distinguished from "concurring negligence" by the fact that in last clear chance the defendant discovers, or by the exercise of ordinary care should have discovered, the peril of the plaintiff, and has the opportunity of preventing the injury, but fails to do so.

2. PLEADING—*Declaration—Bill of Particulars—Demurrer.*—Where a declaration states a case, but the defendant wishes a more specific statement of particulars than is contained in the declaration his remedy is to call for a bill of particulars under section 3249 of the Code, and not by demurrer.

3. INSTRUCTIONS — *Misleading—Relevancy.* — Where the negligence charged in the declaration and shown by the evidence was on the part of the *conductor* in charge of the train, it was not error to refuse to instruct the jury that there could be no recovery unless they believed that the servants *in charge of the engine* were guilty of negligence. If the words "servants in charge of the engine" referred to the conductor, they were misleading. If to the engineer and fireman, they were irrelevant to the case alleged in the declaration and supported by the evidence.

. NEGLIGENCE—*Last Clear Chance—Party Not in Possession of Faculties.*—While the doctrine of the last clear chance is

frequently applied to cases in which the injured party is not in possession of his faculties, it is also applied to other cases.

5. INSTRUCTIONS—*Ignoring Theory of Case—Last Clear Chance.*— Where the plaintiff's case is rested upon the doctrine of the last clear chance, and his evidence is directed to its proof, an instruction which ignores the doctrine as applicable to the case is properly rejected.

6. NEGLIGENCE—*Last Clear Chance—Lapse of Time.*—If defendant's servant, in the exercise of ordinary care, had sufficient time to observe the plaintiff's peril, and save him from injury, but failed to do so, it is immaterial how short the space of time was. The lapse of time if appreciable, is usually immaterial in such cases.

7. INSTRUCTIONS—*Invited Error.*—If a party has secured an erroneous instruction without objection from the other party, he cannot complain if the jury did not follow it.

8. RAILROADS—*Negligence—Trespasser—Licensee—Invitee.* — Under the facts of the case at bar, the duty of the defendant to avoid injuring the plaintiff was the same, whether he was a trespasser or an invitee.

9. EXCESSIVE VERDICT—*Personal Injury.*—A verdict of $18,000 for a personal injury resulting in the plaintiff losing a leg, suffering great pain and incurring expenses of upwards of $3,000 cannot be said to be excessive.

Error to a judgment of the Circuit Court of the city of Norfolk in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*James G. Martin,* for the plaintiff in error.

*Jeffries & Jeffries, James H. Corbitt,* and *Wolcott, Wolcott, Lankford & Kear,* for the defendant in error.

KELLY, J., delivered the opinion of the court.

James E. Crocker brought an action in the Circuit Court of the city of Norfolk against the Norfolk Southern Rail-

road Company to recover damages for personal injuries, and doctors' bills and other expenses incidental thereto, alleged to have resulted from the negligence of the defendant company. Upon the trial of the cause there was a verdict and judgment for the plaintiff in the sum of $18,000, and to that judgment this writ of error was awarded.

We will consider the assignments of error in the order in which they are presented by the plaintiff in error.

1. It is contended that the court erred in overruling the demurrer to the declaration.

There were two counts, the first of which, after alleging that the plaintiff had been riding as a passenger on one of the defendant's freight trains which had stopped at a stations called Corapeake, and was engaged in shifting some cars, and that the plaintiff, with the knowledge and consent of the conductor, had left the train and was standing at the station waiting for the train to again start for its destination, proceeds as follows:

"And the said plaintiff says that a portion of said train was standing upon the defendant's railroad track in front of said station, while the engine was engaged in shifting cars as aforesaid, and while so standing at that place the conductor in charge thereof called the plaintiff from where he was standing at said station to the said train standing upon the track as aforesaid, for the purpose of showing him, the plaintiff, a certain broken part of one of the defendant's cars, which was then a part of said train, and standing upon its track as aforesaid.

"And the plaintiff says that while in the presence of the said conductor he was upon the said track, examining the said car, and after its servants in charge of said train saw, or by the exercise of ordinary care could have seen him, the plaintiff, and the dangerous position in which he then and there was, in time to have avoided injuring him, by the use of ordinary care, it, the said defendant, carelessly, negli-

gently and recklessly ran and propelled its engine and other cars, then being propelled by said engine, upon and against the portion of the said train which was standing on said track as aforesaid, at the time the plaintiff was examining the said car as hereinbefore detailed; by means whereof the said train was driven with great force and violence upon, against and over the plaintiff," &c.

The second count is the same as the first, except that it charges the negligence of the defendant in somewhat different terms, as follows:

"And the said plaintiff says that while in the presence of the said conductor he was upon the said track, examining the said car, the said conductor who had charge of the said train and the movement of said engine and cars, although he saw and knew the position in which the plaintiff then and there was, and knew or should have known the movement of the said engine and cars, carelessly and negligently failed to notify or warn the plaintiff of the fact that the said engine was approaching the portion of the said train which the plaintiff was then examining as aforesaid and was about to strike and move the same, in time for him to reach a place of safety and avoid being injured thereby, and after its servants in charge of said train saw, or by the exercise of ordinary care could have seen him, the plaintiff, and the dangerous position in which he then and there was, in time to have avoided injuring him, by the use of ordinary care, it, the said defendant, carelessly, negligently and recklessly ran and propelled its engine and other cars, then being propelled by said engine, upon and against the portion of the said train which was standing on said track as aforesaid at the time the plaintiff was examining the said car as hereinbefore detailed; by means whereof the said train was driven with great force and violence upon and against the plaintiff," &c.

The demurrer is to each count of the declaration, but the same objections are urged to each, and these objections are, that, under the foregoing allegations, the plaintiff was a mere trespasser on the track, there out of curiosity; that there is no averment of darkness, or of any obstruction to plaintiff's view, or of anything to show that he was not in full possession of his faculties and able to take care of himself, or of anything in his appearance or conduct to put defendant's servants on notice or make them suspect that he was not looking out for himself.   It is argued, therefore, that the declaration shows on the part of the plaintiff a concurring negligence of such a character as to preclude any right of recovery under what is commonly known as the rule of the "last clear chance," being the rule upon which the plaintiff relies to sustain the judgment under review.

We do not think this argument is sound.   The rule in question which has frequently been applied to cases in which the plaintiff's negligence has continued to the very moment of the injury, is a qualification of the general rule that contributory negligence bars a recovery, and the principle is that, although the plaintiff has been negligent in exposing himself to peril, and although his negligence may have continued until the accident happened, he may nevertheless recover if the defendant, after knowing of his danger and having reason to suppose that he may not save himself, could have avoided the injury by the exercise of ordinary care, and failed to do so.   This principle has been adopted by practically all the courts of last resort, both in England and in this country, and has been repeatedly endorsed by this court, some of the recent Virginia decisions containing a very full discussion of the subject, and an extended review of the authorities. *C. & O. Ry. Co.* v. *Corbin,* 110 Va. 700, 67 S. E. 179; *Southern Ry. Co.* v. *Bailey,* 110 Va. 833, 67 S. E. 365, 27 L. R. A. (N. S.) 379;

*C. & O. Ry. Co.* v. *Shipp,* 111 Va. 377, 69 S. E. 925. See also 1 Shear, & Red. on Neg. (6th ed.), sec. 99; 2 Thompson on Neg., sec. 1737; 8 Thompson on Neg. (White's Supp.), sec. 1737.

The distinction between a typical case of "concurring negligence" and one of "last clear chance" is pointed out by Judge Keith, after a full discussion of the authorities, in *Southern Ry. Co.* v. *Bailey, supra,* as follows: "If it be the duty of a person upon the track of a railway to keep a constant lookout for approaching trains (and of this there can be no question), and if it be the duty of the servants of the company in control of the train to exercise reasonable care to discover the presence of a person upon the track, and if in the exercise of such reasonable care the presence of such person would be discovered, and the person on the track is injured and there be no other fact proved, then it is apparent that the case stated would be one of mutual and concurring negligence, and there can be no recovery. The duty was equal and each is equally guilty of its breach. If, however, it appears that those in control of a train, in the discharge of their admitted duty to keep a reasonable outlook, discover, or should have discovered, a person upon the track, and there be superadded any fact or circumstance brought home to their knowledge, sufficient to put a reasonable man upon his guard, that the person upon the track pays no heed to his danger and will take no step to secure his own safety, then the situation changes and the negligence of the person injured becomes the remote cause or mere condition of the accident, and the negligence of the railroad company the proximate cause, and there may be a recovery."

The "superadded fact or circumstance" in the present case, brought home to the knowledge of the conductor, as disclosed by the declaration, was that the plaintiff, who was on the track at the conductor's invitation and in his im-

mediate presence, was engaged in examining the car which the conductor had called him to see.    The natural interpretation of the language of both counts in the declaration makes it clear that the purpose of the pleader was to charge that, by reason of plaintiff's preoccupation in examining the part of the car which the conductor had said was broken and had called him to see, the plaintiff was unmindful of his peril.    If the defendant wished to secure, and if he was entitled to, a more specific statement than the declaration contained of the manner in which the plaintiff was making the examination and of his exact situation at the time, then his remedy was not by demurrer, but by a motion for a bill of particulars under section 3249 of the Code.

The demurrer was not good, and there was no error in overruling it.

2. The second assignment of error is to the action of the court in giving to the jury the two instructions asked for by the plaintiff.

The first of these instructions, designated in the record as instruction "A," is as follows:    "The court instructs the jury, that if they believe from the evidence that the defendant's train by which the plaintiff was injured, was in charge of the conductor, who had the direction and control of its operation and movements, and that a short time before and up to the happening of the accident complained of, the plaintiff was upon the track of the defendant with his mind occupied in a conversation with the said conductor and in examining one of its cars, which was standing on the said track and to which his attention had been directed by said conductor, and that he was paying no heed to his danger from the approaching engine by which the said train was being operated and showed by his conduct that he was oblivious to his impending danger and would take no steps to secure his own safety, and if the jury

further believe from the evidence that while he was so engaged, the said conductor was immediately by his side and saw this in time to have, by the exercise of ordinary care, either stopped said engine or warned the plaintiff of its approach in time to prevent said accident and failed to do so, and that under these circumstances the plaintiff was injured as alleged in the declaration, then the negligence of the plaintiff, if any, in being on the track and in failing to look for the approaching train was not the proximate or direct cause of the accident but a remote cause, and they should find for the plaintiff, whether he was guilty of such negligence or not."

The discussion of the first assignment of error leaves little to be said under this one. The chief objection urged to the instruction is that it submitted the rule of the last clear chance to the jury in a case where the plaintiff was in the full possession of his faculties, where his own negligence continued up to the moment of the accident, and where there was no evidence of anything in his actions or conduct to show the defendant's servants that he was oblivious of his danger, and would not take care of himself. In the light of the authorities cited in our discussion of the demurrer, and of the evidence which was before the jury, and to which we shall hereafter more fully refer, we are of opinion that this objection to the instruction is not good.

A further objection made to it is, that it conflicts with instruction 4 given for the defendant; but the objection cannot be sustained, as will appear later on in this opinion when we come to deal with said instruction 4 in another connection.

The only other instruction given for the plaintiff relates to the measure of damages. There is a formal objection to it, but the objection seems not to be insisted upon. The instruction is clearly correct, and has in substance been

so often approved by this court that we do not deem it necessary to quote it here.

The refusal of the trial court to give certain instructions asked for by the defendant is also assigned as error. These instructions are designated in the record as 4-a, 5-a and 4-aa, respectively. That one which is known as 4-a seems not to be especially insisted upon; moreover, in so far as it could have been considered proper in any respect, it is embraced in the other two instructions which were likewise refused. It will only be necessary, therefore, to consider the two instructions designated as 5-a and 4-aa, the first of which was as follows:

5-a. "The court instructs the jury that they cannot under their oaths find for the plaintiff, unless they believe from the evidence that he has proved by a preponderance of the evidence that defendant's servants in charge of its engine saw him in apparent danger, not in the possession of his faculties, and thereafter had a clear opportunity and time by ordinary care to stop the engine before it caused the accident; and even then they cannot find for the plaintiff if they believe from the evidence he could have saved himself by using reasonable care on his part."

This instruction was properly refused. Its language indicates a purpose to tell the jury that they cannot find for the plaintiff unless they believe that the defendant's servants *in charge of the engine* were responsible for the injury. The negligence charged in the declaration and shown by the evidence was on the part of *the conductor in charge of the train.* The negligence of the conductor was clearly shown, and it is equally plain that there was no negligence on the part of the engineer and fireman, who did not see the plaintiff, and who acted under the conductor's signals and orders. It would, therefore, have been manifestly improper to tell the jury that unless they believed that the engineer and fireman saw his danger and could

have saved him, they could not find for the plaintiff. If it be said that the words, "servants in charge of the engine" were not intended to mean the engineer and fireman, the vice is not removed, because the care and caution on the part of these two employees and their entire freedom from responsibility for the accident were brought out conspicuously in the evidence for the defendant, and the instruction could hardly have failed to mislead the jury into the belief that the language was intended to refer to the engineer and fireman, whether it was actually so intended or not. Furthermore, this instruction would have told the jury that they must not find for the plaintiff unless they believed from the evidence that the servants of the defendant saw the plaintiff "not in the possession of his faculties." This, as we have seen, was not a correct statement of the law. The doctrine of the last clear chance is frequently applied in cases in which the injured party is not in the possession of his faculties, but these cases are merely illustrative of the doctrine and are not the only cases in which the doctrine applies.

Instruction 4-aa was as follows: "The court instructs the jury, that a railroad track is itself a plain danger signal, and a person on or close thereto must listen and keep a sharp lookout both ways for his own protection; and if the jury believe from the evidence that by listening and keeping such lookout, James E. Crocker could have saved himself and his failure so to do was one of the causes contributing to the accident, they must find for the defendant."

Passing by the question, which might be an interesting one, whether "a railroad track is itself a plain danger signal" to a man who is on the track examining a stationary car at the invitation and in the presence of the conductor in charge of the car and of any movement of it, we are of opinion that this instruction is erroneous because it

undertakes, without qualification, to tell the jury, in effect, that they must find for the defendant if the plaintiff could, by keeping a lookout, have saved himself. It is not denied that the plaintiff could have saved himself by keeping a lookout, but this fact does not necessarily bar his recovery. Shipp and Corbin, and many others who have been allowed to recover, could have saved themselves by keeping a lookout. See *C. & O. Ry. Co.* v. *Corbin, C. & O. Ry. Co.* v. *Shipp,* and other authorities cited, *supra.* The trouble with this instruction is that it ignores the plaintiff's contention and the plaintiff's evidence, that he was engrossed in the examination of the draw-head on the car, that he was unconscious of his danger, and that the conductor saw and knew these facts. In other words, the instruction ignores the rule of the last clear chance as applicable to this case, and was properly rejected.

4. The fourth and last assignment of error is based upon the action of the court in overruling the defendant's motion for a new trial.

There was evidence upon which the jury might have found, and upon which, therefore, we must find, the following facts: The plaintiff, James E. Crocker, was a passenger on the defendant's freight train en route from Suffolk, Va., to either Corapeake or Savage, N. C., depending upon whether a party met him at one or the other of these places. This party did not meet him at Corapeake, and at that point the plaintiff got off the passenger car, went to a store, got a cigar and came back to the station. The engine, meantime, had been engaged in shifting some cars between the main track and a side track. When the train first arrived at the station it left several flat cars on the main track, with the south end of these cars about opposite and in front of the station, and the engine and residue of the train proceeded to the switch and ran in on the side track. This side track was parallel to the main track

43

and extended along between the main track and the depot
for some four hundred feet or more each way from the
depot, with a switch at each end connecting it with the
main track.    While the engine was on the side track, back
some four hundred feet north of the depot, the conductor,
Bailey, who was in charge of the train and personally
directing the movement of the engine when the accident
happened, called Crocker from where he was standing near
the depot to the south end of the cars standing as afore-
said on the main line, in order to show him a defective
draw-head which the conductor said had caused him sev-
eral hours' delay on the day before.    Thereupon Crocker
went over and across the side track to the end of the cars
on the main track to look at the draw-head.    When he
started he saw the engine on the side track near the switch,
something over four hundred feet from where he was
standing.    He and the conductor went to the opposite
end of the car from where the engine and switch were,
and the conductor stood with one hand on the end of the
car pointing out the draw-head, while Crocker stood at first
with one foot on the rail and then stepped between the rails
to examine the part of the car to which the conductor was
directing his attention.    The car was nearly as high as
Crocker's shoulder.    A reasonable inference is that at the
time of the accident he was stooping or leaning forward,
for he put his hand on the draw-head when he got between
the rails and he would have most naturally been in a stoop-
ing or bending posture to do this and to make the exami-
nation; moreover, the engineer and fireman both testified
that they were on the engine looking ahead, that they saw
the conductor and others at and near the car, but did not
see anyone on the track at the end of the cars.    If Crocker
had been standing erect where he could see the approach-
ing engine (as is contended by the defendant) he would
have been seen by those on the engine who were looking

directly towards him. While Crocker was thus situated and preoccupied, the conductor signaled the engineman ahead to couple the engine with the north end of the cars, and caused the coupling to be made without any notice or warning to Crocker, and without any effort to save him. When the coupling was made, the cars in front of the engine were driven forward and Crocker was knocked down and his leg was crushed and broken.

There is some conflict in the evidence, notably in the case of the conductor's assertion that he at no time saw Crocker on the track; but there was abundant evidence to warrant the foregoing statement, viewing the evidence as upon a demurrer. If we were concerned with the weight of the evidence, it would not be too much to say that the clear preponderance of it shows that Crocker was on the track in front of the cars, with his attention fixed upon the draw-head, and that the conductor, who was immediately at his side, and who had interested him in the draw-head, saw and knew his position, and then gave the signal for the coupling without paying any further attention to him. The engine came down the main line from the switch very slowly. Crocker was on the track between the rails, according to the testimony, from a minute to a minute and a half. There was ample time to stop the engine or to call Crocker from his place of danger. The conductor made no attempt to do either of these things, but permitted the engine to come right on upon his own signals until the injury was done. He evidently did not think about what he was doing and there is no reason to suppose that his negligence, though so palpable, was wilful or intentional. But we need not speculate as to why he neglected his duty to the plaintiff. The fact remains that he did it, and the defendant is liable for the consequences.

It is true that the whole occurrence covered a very short space of time, but this is true in most cases of accidental

injuries, and lapse of time, provided it be appreciable, is not usually material.    If in this case the engine had been coming back for a distance of a thousand feet, instead of four hundred feet, and if the plaintiff had been on the track examining the draw-head for two or three minutes, instead of a minute, or a minute and a half, with the conductor right by him and fully aware of his position, and all the while responsible for the movement of the engine, the liability of the defendant would be so patent that it would admit of no argument.    Is there any difference in principle between the case as thus supposed and the case as it is? Manifestly not; and we think there was no error in overruling the motion for a new trial in so far as the motion was based upon the alleged want of evidence to support it.

But it is said that the verdict was wrong because it was incompatible with instruction 4 given for the defendant, which was as follows:

"The court instructs the jury, that they cannot, under their oaths, find for the plaintiff unless they believe from the evidence that he has proved by a preponderance of the evidence that the defendant's servants in charge of its engine saw him in apparent danger, with his attention distracted, and thereafter had a clear opportunity and time by ordinary care to stop the engine before it caused the accident."

If the words "servants in charge of its engine" in this instruction refer to the conductor who had charge of the train and of the movements of the engine, then the jury did not disregard the instruction because, as already shown, the conductor did see the plaintiff under the very conditions mentioned in the instruction, and had the opportunity to prevent the injury exactly as specified therein.    Under this construction of the language of the instruction it is not in conflict with plaintiff's instruction "A," and the verdict of the jury was in keeping with both.

If, however, as is contended in the defendant's argument in the petition, the words "servants in charge of its engine" refer only to the engineer and fireman, the jury did disregard this instruction and followed the plaintiff's instruction "A," but it is difficult to see how the defendant can be heard to complain of this. The instruction, if it means what it appears to say and what the petition says it means, was erroneous, as we have seen in discussing, under the second assignment of error, instruction 5-a which was refused. But the error was invited by the defendant. Having secured this instruction, without objection from the plaintiff, the defendant might have had an advantage if the verdict of the jury had been in conformity with it, but it cannot complain because the jury did not follow it. *R. & D. R. Co.* v. *Medley,* 75 Va. 499, 503, 40 Am. Rep. 734; *Collins* v. *George,* 102 Va. 509, 518, 46 S. E. 684.

We have dealt with this case, as the circuit court evidently did, upon the assumption that the conductor had no authority as a representative of the company to invite plaintiff on the track, and that he was there as a trespasser. In the brief for the plaintiff it is claimed that he was an invitee. The question is not material. Under the facts of this case the duty of the defendant to avoid injuring him was the same whether he was a trespasser or an invitee.

Finally, we are asked to say that the verdict was excessive. It was a large verdict, but we find nothing in the record to warrant us in disturbing it on this account. The plaintiff lost a leg by the accident, suffered from it intensely and for a long time, and incurred by reason of it medical and other expenses to the amount of $3,000 or more. Upon the considerations and for the reasons stated by Judge Harrison in *Southern Ry. Co.* v. *Smith,* 107 Va. 553, 560, 59 S. E. 372, we are unable to hold that the verdict should be set aside as excessive.

The judgment of the circuit court must be affirmed.

*Affirmed.*