Jones, J.
Plaintiffs in error base their claim upon the theory that their action is predicated upon a nuisance, and that negligence need not be proven. They confess that their written instructions, which were refused by the court, rested upon this claim, and counsel for plaintiffs in error in their brief contend “that there was but one issue for submission to the jury upon which the liability of the defendant would depend, i. e., whether the fire originated from sparks or burning substances emitted from defendant’s cupola,” and that the “question of negligence or escape from liability by reason of the use of proper appliances and operation without negligence * * * were not issues in this case.”
That the plaintiffs in error, who were plaintiffs below, do not consider negligence as the gist of the *525 action is shown by the fact that negligence was not plead in their petition and reference to it was omitted from the charges requested. The petition alleges that Shouvlin was the owner of a manufacturing plant in the city of Springfield, about 218 feet distant from 0’Day’s dwelling house; that by operation of the cupola, used in connection with his plant, the defendant Shouvlin caused sparks and coals of fire to be thrown out of the top of the smokestack into the air, and that such sparks and coals of fire were carried over upon the premises of the plaintiff when a strong wind was blowing in that direction, as the defendant well knew; and that by reason of such operation of the cupola, and while such strong wind was blowing, on the 2d day of May, 1918, sparks ignited plaintiff’s house and caused its destruction, together with the household goods contained therein.
The petition did not allege, nor did the plaintiffs’ evidence prove, that the manufacturing plant was inherently a nuisance, unless the operation of the cupola which caused the fire on the day in question should prove to be a nuisance per se. The plaintiffs’ action and the basis of their claim rests upon the maxim, sic ubere tuo ut aUenrnn non laedas, that one’s enjoyment and use of his own property should be such as not to injure the rights of another in his property. The employment of this maxim in its proper application has been recognized by the courts of this country and of England. Its application in concrete cases, however, has been a source of judicial tribulation in American courts. The principal case where it was announced and applied was the *526 early English ease of Fletcher v. Rylands, L. R., 1 Exch., 265, appealed to the House of Lords, Rylands v. Fletcher, L. R., 3 H. L., 330.
That the maxim is not a hard and fast rule that should generally he employed is recognized in the text, Joyce on Law of Nuisances, Section 32, wherein it is said: “It follows that the maxim sic utere, etc., is undoubtedly to be so limited in its application as not to restrain the owner of property from a prudent and reasonable exercise of his right of dominion.” The authors of this subject have, therefore, recognized and treated the law of nuisances with particular reference to its application to modem conditions and to “matters of trade and business where the rights of the respective parties must be carefully weighed in order that neither the public nor the individual shall suffer nor the prosecution of legitimate business be impaired.” This appears from the title page, and from the preface attached, the authors treating in a separate chapter the subject of nuisance in its relation to trade or business'.
In Bradford Glycerine Co. v. St. Marys Woolen Mfg. Co., 60 Ohio St., 560, it was decided that negligence need not be alleged or proven where the substance (in that case nytroglycerine) was one usually recognized as highly dangerous, the storage of which was a constant menace at any place in the vicinity. But the court was very careful to deny the rigid application of the doctrine announced in Rylands v. Fletcher, supra, other than to eases of like character, and in the opinion stated that in the application of the maxim, the house of lords seemed to recognize *527 a distinction “between an ordinary and extraordinary” nse of the premises by tbeir owner. An explosion of a steam boiler, resulting in damage to an adjoining owner, would be a case very similar in principle to this, yet it has been held in this state, in Huff v. Austin, 46 Ohio St., 386, that a cause of action arising from an injury caused by such explosion cannot be sustained without proof of negligence. In commenting upon the maxim, sic utere, etc., Bradbury, C. J., in Bradford Glycerine Co. v. St. Marys Woolen Mfg. Co., supra,, carefully draws a distinction between the conduct of a business requiring the use of steam for operation and the storing of highly explosive dangerous substances, such as nitroglycerine, on the premises. On page 572 the learned judge says: “The use of steam has, however, so generally been employed in every productive industry that every owner of real property may reasonably be held to contemplate the contingency of its being employed upon adjacent premises, and to enjoy his property subject to that risk. * * * The modern steam boiler and engine cannot be said to be such a menace to property and human life as to constitute a nuisance per se. They cannot as such be driven from the centers of population. * * * Under the circumstances that surround the productive arts and industries of today a modification of the strict rule of liability in favor of those who employ steam in such arts or industries, may not be inconsistent with its assertion against those who store gunpowder and nitroglycerine, or blast rocks adjacent to the property of others. That public policy which seeks to secure the welfare of the many may demand such modification.”
*528 And in the case of Huff v. Austin, supra, requiring proof of negligence in a steam boiler case, the Ohio judge said, at page 388: ‘ ‘ Considering the extent to which the agency of steam is now so necessarily and usefully employed, we are not prepared to hold that, the owner of a steam-boiler used on his premises, shall be deemed virtually an insurer against all damage and injury to person or property resulting from an explosion.” And, again, on page 387:' “The defendants had a right to place the steam-boiler on their premises. Used as it was to ■run the saw-mill, it was in no sense a nuisance. As an agent in the varied departments of industry, the steam engine has become a necessity in modern life. * * # Though doing a lawful act upon his own premises, he will be liable for injurious consequences that may result from it to another, if it was so done as to constitute actionable negligence. In such case, there is a proper application of the rule that one should enjoy his own property in such manner as not to injure that of another person.”
The Ohio cases upon this subject are carefully compiled, and the rule announced in Rylands v. Fletcher, supra, is distinguished, by Price, J., in Langabaugh v. Anderson, 68 Ohio St., 131. In that case oil escaped from a tank or reservoir of the defendant, flowed under his building and down the slope of a ravine until it came in contact with an open fire, then it ignited and the flame followed the oil trail back along the line of its escape, thus causing the destruction of the plaintiff’s building. The trial court charged that if the stored oil was highly explosive and dangerous and a constant menace to property in the vicinity, there could be a recovery *529 if such stored oil was the proximate cause of burning plaintiff’s property. The supreme court held, however, that the case should have been submitted to the jury on the question of negligence.
In the early cases the principle announced in Rylands v. Fletcher, supra, was applied to the safekeeping of fire, imposing liability upon the defendant irrespective of the care employed by defendant. Parliament, however, recognized the hardship of this rule by repealing it. “It seems never to have been held in America that one who starts a fire on his own premises is liable, absolutely and without proof of negligence, merely upon a showing that it escaped and did damage on adjacent property. The foundation of liability is negligence.” 20 Euling Case Law, Section 67, page 76.
So it was held in Ruffner v. C., H. & D. Rd. Co., 34 Ohio St., 96, that no inference of negligence arose from the mere fact that injury to adjacent property was caused by sparks emitted from a locomotive, and in his opinion, at page 97, Mcüüvaine, J., said, “A party is not answerable in damages for the reasonable exercise of a right. A liability arises only when it is shown that the right was exercised negligently, unskillfully, or maliciously.”
The rule universally adopted in this country is stated in 29 Cyc., 462, under the title, Chimneys, Flues, Furnaces and Engines: “Persons in the lawful use of fire or manufacturing, mechanical, or propelling purposes are held to the exercise of ordinary care to prevent it from injuring others; and if, notwithstanding the use of such a degree of care, adjoining property is destroyed, no liability is in *530 curred. Negligence or misconduct on the part of defendant must be shown in order to render him liable to one whose property has been destroyed.”
The defendant Shouvlin had the lawful right to erect his plant and to operate it. In neither respect was his conduct unlawful per se, notwithstanding the fact that his manufacturing plant was located within the limits of a municipality. It is within common knowledge that manufacturing plants are usually employed within the limits of urban centers. In some instances the erection of these industrial concerns enhances the value of property, and in others diminishes it. Because of the public benefits conferred by the erection and operation of these plants, as part of the system of our industrial civilization, private convenience must in some respects give way to public benefits. So long as these manufacturing plants are operated in the usual and ordinary way, by modem appliances and without negligence upon the part of the owner and operator, there will be no liability on the part of the latter, providing the operation is not inherently noxious or dangerous, and, therefore, a nuisance. This exception, of course, does not apply in cases of unusual storage and use of nitroglycerine, gunpowder and the like, which at all times and places are inherently dangerous and which constitute an extraordinary or unusual use of property, menacing individuals or the public.
In the present case the insurance companies who paid the loss are substantially the real parties in interest. They were absolute insurers of the property destroyed, receiving premiums in consideration of that risk, and they now seek to place the same liability upon the part of the manufacturer', and require him, as an absolute insurer, to pay them the *531 loss incurred. It is doubtful if there can be found any case in our American jurisprudence where the strict liability of an insurer can be employed in a ease of this kind. It appears from the petition that the defendant was engaged in a lawful business, employing a lawful facility in its operation. The sparks which ignited the plaintiff’s dwelling were carried by means of a strong wind blowing in the direction of plaintiff’s premises. The defendant’s evidence tended to prove that the cupola used was a Whiting cupola, one of the most modern type used in the business, and that, while no spark arrester was used, none was needed upon that type of cupola, and none used in that trade or business in that city. In the aspect of the case pleaded in the petition, and insisted upon by plaintiffs below, all this testimony of care upon the part of the defendant below would be disregarded, the defendant be held to the liability of an insurer and made responsible for damages upon the mere proof that sparks escaped from the cupola and ignited the plaintiff’s dwelling. We have already alluded to the Ohio decisions, which, in this class of eases, require proof of negligence before recovery may be had. Outside of Ohio, the courts in other states are in substantial unanimity in support of the principle here announced.
The case of Day v. H. C. Akeley Lumber Co., 54 Minn., 522, is substantially on all fours with the instant ease. In that case the plaintiff and defendant each owned a steam saw-mill on adjacent premises. The defendant’s mill had one smokestack nine feet in diameter and one hundred and forty feet high and another smokestack five feet in diameter, both of which had nets of wire cloth to arrest cinders and sparks. During a dry time, when the wind was blowing from the north, the lumber in plaintiff’s *532 yard took fire, was consumed, and the loss adjusted by the insurance companies. As in this case, these insurance companies paid a large sum of money toward settlement of the loss and united with the plaintiff in the prosecution of the action against the defendant. The court held in its syllabus: ‘ ‘When fire used for manufacturing purposes is communicated to and destroys property belonging ■ to another, negligence or misconduct on the part of the manufacturer must be shown in order to recover damages sustained by the person whose property has been destroyed.” In that ease plaintiff had asked a special instruction which ignored the element of negligence altogether. This instruction imposed liability upon the defendant if the jury should find that a refuse burner, used in the operation of the defendant’s plant, “on account of its nature, use and operation and essential character, was dangerous, and necessarily tended to the damage of the property of others in that immediate vicinity, ’ ’ and that fire escaped therefrom and consumed the lumber of the plaintiff. In its opinion the court said, at page 527: “This request eliminated from the case any consideration by the jury of defendant’s alleged negligence, and planted the plaintiff’s right recover upon grounds independent of such negligence. The fire used by defendant was for manufacturing purposes, and, if used with proper safeguards and without negligence, no liability attached for damages caused by its escape. Any other rule would make the person who uses fire for manufacturing or mechanical or propelling purposes, or even for heating, an insurer against accidents.”
The same principle is announced by the supreme court of Maine in American Ice Co. v. South Gardi *533 ner Lumber Co., 107 Me., 494, 32 L. R. A., N. S., 1003. In that ease the plaintiff was the owner of an ice plant. On the adjoining premises the defendant owned a lumber plant, and in its operation maintained and used steam boilers and a smokestack for the escape of the smoke and cinders from the fires .under the boilers. A fire occurred which consumed the plant of the plaintiff. The jury found specifically, in answer to questions submitted to them by the presiding justice, that “the fire was caused by sparks or cinders from the defendant’s smoke-stack, and the defendant was negligent in the construction, maintenance or operation of the stack connected with its boilers.” The court held that the owner of the smokestack was not liable for fire started by a spark from it, unless he was shown to have failed to exercise ordinary care in the construction, maintenance and operation of the plant. And in its opinion, at page 497, the court says: “The principles of law applicable to the question of the defendant’s negligence are not in controversy. They are too well settled to require the citation of authorities. The mere fact that the fire was caused by a spark or cinder from the defendant’s stack is not alone sufficient to establish its liability. The defendant was not an insurer of the plaintiff’s property.”
The same principle is supported by the case of Planters’ Warehouse & Compress Co. v. Taylor, 64 Ark., 307. There damages were sought because of fire caused from sparks emitted from the smokestack of the compress company, which was about 200 feet distant from the property of the plaintiff. The following is found in the syllabus: “ A compress company is not liable for the loss of adjacent prop *534 erty by fire originating from sparks from its smokestack if, in constructing and operating its compress, it takes such precautions to lessen the danger and prevent injury to adjacent property as a man of ordinary prudence conversant with the business would have taken.”
To the same effect is the case of Gagg v. Vetter, 41 Ind., 228. There the plaintiff was the owner of a city lot on which was erected a frame building used as a furniture factory. On premises contiguous to the factory the defendants had erected chimneys, furnaces and smokestacks, for the purpose of carrying on a brewery business. The plaintiff alleged that the defendants kept up large fires, and that furnaces, flues and chimneys were so located and built as to endanger the plaintiff’s property; that these were constructed in an insufficient, careless and negligent manner, so that when the same were in use the burning sparks, etc., from the furnaces, flues and chimneys fell upon the buildings of the plaintiff. The court held that the defendants were liable if it were proven either that ordinary care and diligence Avere not employed in the construction of the chimneys, furnaces and flues, or that they were guilty of negligence in the management thereof.
In the case of Collins v. George, 102 Va., 509, it appears that sparks from the engine of a saw-mill operated by the defendant escaped, were carried by the wind to a point 50 yards distant, and ignited and consumed property belonging to the plaintiff. The court there held the rule to be that persons in the lawful use of fire must exercise ordinary care to prevent it from injuring others, and that what was ordinary care depended upon the circumstances of the particular case.
*535 Without extending this opinion further we will be content with the citation of the following cases supporting the principle announced: Holman v. Boston Land & Security Co., 20 Col., 7; Webster v. Symes, 109 Mich., 1; Losee v. Buchanan, 51 N. Y., 476, and Peers v. Elliott et al., 21 Can. S. C. Rep., 19.
We can find no reported case imposing the liability of an insurer upon a manufacturer operating a lawful business, in a lawful manner, unless the operation of such business is inherently noxious or carried on in a negligent manner. If, as in this case, the defendant tenders testimony to show that such business is conducted by him by the usual and ordinary methods known and used in that line of business, such testimony constitutes evidence proper to go to the jury for the purpose of determining whether the defendant used ordinary care in the conduct of the business.
In view of what has been said, the plaintiffs in this case, in order to recover, should have pleaded and proven negligence, and not having so pleaded in their petition, the demurrer of the defendant should have been sustained. Evidently the viewpoint of the trial judge upon that feature of the case changed in the course of the trial, as is shown by his admission of testimony upon that issue and by his refusal to give the special charges asked for by plaintiffs. Still, the general charge of the court was misleading. In so far as the court charged the element of negligence in the case the charge was correct, but in that part of the general charge where he submitted to the jury the proposition that the defendant would be liable although using the most approved means, if the method employed would in the nature of things injure and destroy his neigh *536 bor’s property, the charge was erroneous, since it could- only apply to a situation constituting nuisance par se, which was neither plead nor proven in the present case. However, the plaintiffs in error now claim that by the introduction of evidence and the charge of the court the issue of negligence was thrust into the case, and that that issue did not conform to the facts set forth in the petition. This is true, but how could it prejudice the plaintiffs in error? Their case was founded upon liability as an insurer, while the case finally submitted to the jury was based on negligence, which the plaintiffs were required to prove in order to recover. Under no aspect of the case. could the plaintiffs have recovered without proof of negligence, and that issue was determined by the verdict of the jury in favor of the defendant. There could be no possible prejudice, therefore, to the plaintiffs below.
The judgments of the lower courts will be affirmed.

Judgments affirmed.

Johnson, Robinson and Matthias, JJ., concur.
Hough, J., concurs in the judgment.
Marshall, C. J., and Wanamaker, J., dissent.